**UNITED STATES v. BURNETT.**
No. 18596.

United States District Court,
W. D. Missouri, W. D.

Sept. 1, 1953.

Edward L. Scheufler, Dist. Atty. and Kenneth C. West, Asst. Dist. Atty., Kansas City, Mo., for plaintiff.

Luther W. Adamson, Kansas City, Mo., for defendant.

Hayden C. Covington, Brooklyn, N. Y., for defendant.

DUNCAN, District Judge.

Defendant, Charles Vernon Burnett, was charged in an indictment with knowingly refusing to be inducted into the Armed Forces of the United States. He is 24 years of age, and a resident of the State of Kansas. He contends that he is an ordained minister of religion within the meaning of the law, and should have been so classified, and for that reason, declined "to take the step forward" for induction into the Armed Forces. The induction center for the area in which his Board sits is Kansas City, Missouri, and therefore jurisdiction is in this court.

The essential facts are not in dispute. His classification questionnaire was returned on September 28, 1948. In answer to questions under Series VI—Minister, or Student Preparing for the Ministry—the registrant stated:

"I am a minister of religion. I do regularly serve as a minister. I have been a minister of the Watchtower Bible & Tract Society (Jehovahs Witnesses) since January appx 1, 1941. I have been formally ordained."

In answer to questions in Series VIII he stated: "I am now a fulltime student." Later he stated:

"I am a full time minister Going to the peoples' homes, placing Bible literature (on contribution basis) and conducting free Bible studies."

He further stated that he expected to continue indefinitely in the ministry.

"I am a representive of the Watchtower Bible & Tract Society"

and "Preach the Gospel of God's Kingdom to all earth."

He further stated that he devoted approximately 105 hours a week to his religious work. His questionnaire did not show that he was engaged in any other activities or pursuits.

Thereafter, on October 27, 1948 by a vote of 3 to 0 the registrant was classified "IV-D"—that of a minister of religion. On July 21, 1952 the Local Board addressed a communication to the State Director, Selective Service at Topeka, Kansas, in which it was stated that the files of "Conscientious Objectors" had been checked over, and requested information concerning the registrant. In this request for information it was asked whether or not—

"If he is a Jehovah Witness, as claimed in the letters, should he not have signed Series XIV in the Classification Questionnaire and filled out a Form 150 to become a part of that Questionnaire.

"Also, if students preparing for ministry are required to obtain their course of instruction from recognized theological or divinity schools, would this registrant qualify for the classification in Class IV-D.

"It is the opinion of our Local Board that this registrant should be placed in Class I-O, unless he is able to submit information which would place him in a deferred class."

This communication was signed for the Board by the Clerk. In response to that communication, the State Headquarters, under date of July 23, 1952 requested that the Local Board reopen and consider anew the claim for deferment of the registrant. Also on the same date, a communication was addressed by the State Headquarters to the Local Board stating:

"It is the opinion of this office that this registrant should be considered for classification in Class I-A, inasmuch as he does not qualify for classification in Class IV-D.

Since he did not sign Series XIV in Classification Questionnaire nor complete SSS Form No. 150, he could not be considered for classification in Class I-O. * * *"

On July 24 the Local Board, in a communication signed by the clerk, advised the registrant that his case would be reopened on July 28, 1952, and that if he had any evidence he wished to submit, it should be done in writing before the above date.

Pursuant to that notice, the registrant submitted to the Board a communication dated on that date, reaffirming his status as a minister of religion, detailing his activities, and also submitted therewith, a "Certificate for Servant in Congregation." This was dated October 15, 1948, and signed by the Superintendent of Ministers and Evangelists of the Watchtower Bible & Tract Society of New York. His duties as a minister were described at considerable length in this certificate. At that time other information was submitted to the Board describing his religious status.

On July 28 he was reclassified in Class I-A, and on the 30th the notice of reclassification was sent to him. On August 5, 1952 the registrant in a letter addressed to the Board, requested a hearing and that he be permitted to appear personally before the Board and be permitted to be represented by counsel. On August 7, the Board replied, advising him his request would be granted and a hearing held, and fixed the time for such hearing as August 25, but advised that he would not be permitted to be represented by counsel. (Such representation is not permitted by the regulations).

Before the hearing he submitted to them written data signed by the "Company Servant" and by numerous other people, in which they certified that he was an ordained minister preaching under the Watchtower Bible and Tract Society, and that he had been associated with that Society since 1939.

He also submitted a "Certificate for Pioneer" issued by the Watchtower Bible

& Tract Society under date of August 6, 1952, which certificate seems to indicate an advancement in his evangelistic work. At the hearing the testimony shows that several leaders in the religious work in which he was engaged, accompanied him and sought to testify concerning his religious activities, but were not permitted to do so.

A brief summary of the interview with Burnett as recorded and signed by the clerk and made a part of the record, indicated that—

"* * * several of the Jehovah followers with him, but they were not admitted to the meeting. He was permitted fifteen minutes for the interview. He proceeded to point out that he had devoted most of his life in preparing for ministry, was ordained according to their principles on June 15, 1942, at the age of 13 years 6 months and 7 days. A photostatic copy of his ordainment was submitted (a corrected copy). He had conducted services at different places and was serving people of their society in many communities. His schooling consisted of a high school education, taking subjects which would help in preparing for ministry.

"Mr. Stickler asked him if he would qualify to serve as Chaplain in service or if he could perform wedding ceremonies. His answers to these questions were in the negative. Mr. Garrett asked him if it were true that all Jehovah Witnesses were ministers and he said they were. He stated that their teachings were the same as those of Jesus Christ, then later said they were not the same.

"In summing up the whole case, it is the opinion of our Local Board that this registrant does not meet the qualifications required for a minister's classification and there appears to be a discrepancy in the date he was ordained."

Several documents were introduced showing meetings which were to be ad-

dressed by the registrant in his capacity as a minister. Thereafter the registrant appealed his classification to the Selective Service Appeal Board—the classification was there affirmed, and, at the registrant's request, an appeal was perfected to the Presidential Appeal Board, and also affirmed there. Thereafter, in due course, the registrant was notified to report for induction, which he did, but refused to be inducted.

█ If there is any basis for the classification of a registrant, the court has no jurisdiction to change it. Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59; Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567, and many other cases. Under the Selective Service Act, 50 U.S.C.A.Appendix, § 451 et seq., the court has no right to weigh the evidence. Although the court may clearly differ with the Board as to the classification that should be given a registrant, yet the court may not substitute its views for those of the Board, so, the only question we are confronted with here is whether or not there was any basis in fact before the Board for the classification, and whether or not the Board acted arbitrarily in the conclusion it reached. The Board cannot deliberately ignore the undisputed evidence before it in determining its classification of a registrant, and in reviewing the action of the Board, the court is limited to the evidence that was before the Board and considered by it at the time of the Classification.

Jehovah's Witnesses have been recognized as a religious sect and its ministers entitled to deferment under the Selective Service Act. Apparently it is the contention of all Jehovah's Witnesses that they are ministers of religion. Of course, that contention is inconsistent with the law, and the mere claim to such status does not entitle them to be deferred as ministers. A very large number of Jehovah's Witnesses likewise are also conscientious objectors.

Every case of one claiming to be a minister of religion of the Jehovah's witness in respect of military service must

be decided upon its own facts—possibly by mere degrees of service, as defined by the statute. One may give a considerable amount of time to teaching the word of God, and yet certainly not be a minister of religion, even though his followers consider him to be such.

Unfortunately, it has been the experience of this court that a very large number of the followers of Jehovah's Witnesses do claim exemption and deferment on the ground that they are ministers of religion, when in fact, they cannot so qualify, and by reason of such unfounded claims, a greater burden is placed upon those who may truly be so classified when it comes to a determination of that fact by the Selective Service Boards.

It seems to me that the evidence in this case clearly showed that the registrant was a minister of religion, within the meaning of the law. Certainly if any of the followers of Jehovah's Witnesses could be ministers of religion, this man is. The facts seem to have so impressed the Selective Service Board who first made the classification in 1948. Just why the file was reopened was not made clear. The notice to the State Headquarters indicated they were reviewing those who claimed exemption as conscientious objectors. This registrant, although it appeared that he was a conscientious objector, did not make such deferment claim for that reason in any of his questionnaires.

■ According to the clerk, the evidence before the Board and the information submitted to it at the time of his reclassification showed very extensive activities in his work and the rather unusual number of hours devoted to it.

The testimony also apparently revealed that his secular activities did not exceed 12 hours a month; that he lived on a farm with his father; that he owned some livestock, but that others of his family took care of it while he devoted several hundred hours a month to his religious work, extending over an area of several counties, and even into another state. All of this information was before the Board, and there is not a suggestion in the record indicating the contrary.

Apparently the Board had the impression at the time of its reclassification that it was necessary for one to have attended a theological seminary, be eligible to serve as a chaplain in the Army, or be authorized under the law to perform marriage ceremonies, in order to be classified a minister. This registrant was not eligible to perform any of these functions, although the testimony shows that he did say to the Board that he was qualified to perform marriage ceremonies. Whether this is true under the laws of the State of Kansas, I cannot say. The clerk testified that it was largely upon this testimony that the reclassification was made.

The regulations have not so restricted or limited the definition of a minister of religion. The record clearly reveals that this man was recognized by the Society as a minister of religion. Section 466 (g) (1, 2) Title 50 U.S.C.A. Appendix defines "minister of religion" as follows:

"(g) (1) The term 'duly ordained minister of religion' means a person who has been ordained, in accordance with the ceremonial, ritual, or discipline of a church, religious sect, or organization established on the basis of a community of faith and belief, doctrines and practices of a religious character, to preach and to teach the doctrines of such church, sect, or organization and to administer the rites and ceremonies thereof in public worship, and who as his regular and customary vocation preaches and teaches the principles of religion and administers the ordinances of public worship as embodied in the creed or principles of such church, sect, or organization.

"(2) The term 'regular minister of religion' means one who as his customary vocation preaches and teaches the principles of religion of a church, a religious sect, or organ-

146

ization of which he is a member, without having been formally ordained as a minister of religion, and who is recognized by such church, sect, or organization as a regular minister."

I have carefully reviewed the file; have read all of the documents that are contained therein, and I am unable to find that there is any basis in fact for the reclassification by the Board.

Defendant's Motion to Dismiss is therefore hereby sustained, and the defendant discharged.