385 F.2d 506
 Application of Stuart M. KANAS, by Matthew Kanas, His
Father, for a Writ of
Habeas Corpus, Petitioner-Appellant. Major General T. R.
Yancey, Commanding Officer, Fort Hamilton,
Brooklyn, New York, Respondent-Appellee.
 No. 120, Docket 31516.
 United States Court of Appeals Second Circuit.
 Argued Sept. 19, 1967.
Decided Nov. 13, 1967.
 
 Herbert S. Garten, Baltimore, Md., (Fedder & Garten, S. Ronald Ellison, Baltimore, Md., Joel L. Jacobson, Commack, N.Y., on the brief), for petitioner-appellant.
 Carl Golden, Asst. U.S. Atty., (Joseph P. Hoey, U.S. Atty., for Eastern District of New York, on the brief), for respondent-appellee.
 Before LUMBARD, Chief Judge, and WATERMAN, and FEINBERG, Circuit judges.
 FEINBERG, Circuit Judge:
 
 
 1
 Stuart M. Kanas was inducted into the Army on June 28, 1967. His father, Matthew Kanas, petitioned the United States District Court for the Eastern District of New York, on his son's behalf, for a writ of habeas corpus. The application claimed that Stuart's induction was unlawful because he was a cantor employed by a Jewish congregation in Pennsylvania, and thus entitled to exemption from the draft as a 'minister of religion.'[1] On June 29, following a hearing, Judge Dooling denied the writ, but stayed his order pending this court's review. We reverse. The writ releasing Stuart M. Kanas from the Army is granted without prejudice to any reclassification his local board finds proper following a new hearing.
 
 
 2
 From September 1961 until June 1966, the registrant was a student at the Hebrew Union College-- Jewish Institute of Religion, School of Sacred Music in New York. There, while he studied to become a cantor, he enjoyed a II-S deferment.[2] In a June 1962 letter to the local board, the Hebrew Union College described the registrant's program and the College's goal as follows:
 
 
 3
 The program of studies in which Mr. Kanas is currently enrolled * * * requires five full years of attendance and leads to the degree of Bachelor of Sacred Music and diploma as Cantor. Our graduates are trained to serve as qualified functionaries in conducting religious worship and other religious activities in synagogues of all denominations in Judaism.
 
 
 4
 Upon graduation, the registrant received this degree and certification as a cantor. On June 24, 1966, the registrant notified his local board, No. 66 in Flushing, New York, of the change in his status, and told the board that he had been 'elected as a resident clergyman' by Congregation Melrose B'nai Israel, a synagogue in Cheltenham, Pennsylvania. On July 7, the Congregation informed the board that the registrant was employed 'for an initial period of two years as Cantor and Musical Director of our Synagogue,' and that the Cantor and his wife 'have taken residence close to the Synagogue.'
 
 
 5
 The local board thereupon initiated reclassification procedures; it invited the registrant to appear at the next board meeting and to bring all information pertinent to his status. The board also sent him SSS Form 127, entitled 'Current Information Questionnaire.' The registrant did not attend the meeting, but completed and returned the Form; on it he characterized his job as 'Cantor' and, in response to the request that he 'give a brief statement of his duties,' described them as 'Pastoral duties, Conduct Worship Services, Teach children in Hobrew School.' He also noted 'other occupational qualifications'-- 'Play Saxophone & Clarinet.' On this record, without written opinion, the local board on August 10, 1966 unanimously classified registrant I-A.
 
 
 6
 By letter to the local board dated August 14, 1966, the Congregation defined the position of 'Reverend Cantor Kanas' in more detail.
 
 
 7
 He is a regular minister of our Congregation, co-officiating with the Rabbi at all worship services. As a minister of our Congregation he also has the right to perform marriages and funerals and any other such ministerial duties.
 
 
 8
 Reverend Kanas is also a teacher of the principles of our faith in our Religious School and is director of all music at the synagogue, etc.
 
 
 9
 This letter was construed as an appeal by the registrant's employer from the I-A classification, see 32 C.F.R. 1626.2. The Government Appeal Agent also appealed. The latter referred to the Congregation's letter, and then stated his 'strong personal belief' that IV-D should and does include cantors, because they are 'vitally needed as an instrument of the Jewish religion and its observance.' He also thought that IV-D should include 'lesser officers than merely ministers and priests in other religions.'
 
 
 10
 In January 1967, the New York City appeal board, two to one, upheld the I-A classification. The board found that registrant's 'regular' vocation was that of 'Cantor and Musical Director,' and that 'by far the major portion of his time' was spent in that capacity. Moreover, 'most, if not all, of his claimed ministerial functions involve, in major degree, the exercise of his ability and qualifications as Cantor.' The board concluded, without more explanation, that these ministerial functions in his role as cantor were 'more or less irregular and incidental to his duties as Cantor and Musical Director.' The board also noted the apparent 'concession' of the Appeal Agent that cantors were not presently within the IV-D exemption, and refused to act in a manner which might enlarge the class of those eligible for IV-D. An appeal to the President was unavailing, and the registrant's induction in June 1967 followed.
 
 
 11
 Judicial review of Selective Service determinations is severely limited; only if there exists 'no basis in fact' for a classification will a court interfere. See United States v. Seeger, 380 U.S. 163, 185, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), quoting from Estep v. United States, 327 U.S. 114, 122-123, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Cox v. United States, 332 U.S. 442, 452-453, 68 S.Ct. 115, 92 L.Ed. 59 (1947).[3] This does not mean, however, that a local board is free to disbelieve all evidence in the record in the absence of any impeaching or contradictory material.
 
 
 12
 The task of the courts in cases such as this is to search the record for some affirmative evidence to support the local board's overt or implicit finding that a registrant has not painted a complete or accurate picture of his activities. But when the uncontroverted evidence supporting a registrant's claim places him prima facie within the statutory exemption, dismissal of the claim solely on the basis of suspicion and speculation is both contrary to the spirit of the Act and foreign to our concepts of justice.
 
 
 13
 Dickinson v. United States, 346 U.S. 389, 396-397, 74 S.Ct. 152, 157-158, 98 L.Ed. 132 (1953).
 
 
 14
 We have carefully searched the record before us, and have set out its relevant portions above. We note that there is no intimation in the record that the registrant is not in fact performing full time the duties for which the congregation hired him. Moreover, the basic facts in the record appear undisputed. We find that the registrant made out a prima facie case for classification IV-D and that there is no affirmative evidence to rebut his claim. We make these findings with full awareness that the registrant must bear the burden of establishing his right to an exemption, and that the ministerial exemption is a narrow one. See Dickinson v. United States, 346 U.S. at 394-395, 74 S.Ct. 152 at 157-158; 32 C.F.R. 1622.1(c).
 
 
 15
 The only Selective Service statement before us concerning the basis of the registrant's I-A classification is the appeal board's opinion. One possible interpretation of that opinion is that because registrant is a 'Cantor and Musical Director' his primary occupation is musical by definition. Consequently, the ministerial functions he performs are secondary and he does not qualify for a IV-D exemption. This theory constitutes a ruling that a person denominated 'Cantor and Musical Director' is per se not qualified. Judge Dooling did not so construe the action of the board, and we would also be loath to do so since each classification must be determined on its particular facts, not on the basis of any blanket characterization. See, e.g., United States ex rel. Hull v. Stalter, 151 F.2d 633, 637-638 (7th cir. 1945). Moreover, we believe that at least in some instances cantors may qualify for IV-D.[4] There is a surprising paucity of cases on the point; whether this shows that such exemptions are usually allowed, we simply do not know. In any event, the statute requires that a 'regular minister of religion' be one who 'as his customary vocation preaches and teaches the principles of religion * * *.' 50 U.S.C.App. 466(g)(2). In Dickinson, the Supreme Court identified 'regularly, as a vocation, teaching and preaching the principles of his sect and conducting public worship in the tradition of his religion' as the 'vital test' of a registrant's claim. 346 U.S. at 395, 74 S.Ct. at 157. The legislative history of the ministerial exemption reveals that IV-D classification is intended 'for the leaders of the various religious faiths and not for the members generally.' S.Rep.No. 1268, 80th Cong., 2d Sess. 13 (1948). We are aware that this standard was formulated with the particular problems of Jehovah's Witnesses in mind, but it seems likely that under this test the cantor described in Abraham A. Salkov, 46 T.C. 190 (1966), would qualify for IV-D exemption. To give the tenor of that decision, we quote from it briefly, 46 T.C. at 198:
 
 
 16
 Regardless of the theoretical power of a Jewish layman, what in fact does Cantor Salkov do and what are his functions? He is a spiritual leader. He teaches. He performs pastoral duties. He is the minister-messenger of the Chizuk Amuno Congregation, commissioned and licensed by the congregation and by the Cantors Assembly of America to officiate professionally and regularly in the sacred religious service of the Jewish people. His functions are beyond any 'minister of music.' * * * For long periods of both prayer and service he is the only person standing at the pulpit. At all times he and the rabbi share the pulpit. Historically and functionally he is a suigeneris minister.
 
 
 17
 We do not decide whether Stuart M. Kanas is such a cantor. But he cannot be denied IV-D solely on the ground that he is a 'Cantor and Musical Director.'
 
 
 18
 An alternative interpretation of the board's opinion, and the one adopted by the district court, is that the board found as a fact that the registrant's activities as a minister were merely 'irregular and incidental' to his other functions, which it regarded as non-ministerial. The difficulty with this approach is that the distinction between the two types of activities is nowhere stated and, even if it were, there is a total lack of evidence to support any such breakdown. The record shows that the registrant co-officiates with the rabbi at services of worship, conducts funerals and, perhaps, marriages,[5] teaches Jewish principes to children, and supervises all music at the synagogue. Nowhere is there any record support for an allocation of time between the admittedly ministerial duties, which the board found 'irregular and incidental,' and the music supervision which the board apparently thought to be registrant's primary occupation.[6] In addition, the record is totally devoid of any consideration whether the musical aspect of a cantor's work is, in fact, unrelated to preaching and teaching the principles of the faith. As already noted, 'suspicion and speculation' cannot fill the need for some 'affirmative evidence' to support the board's conclusion. See Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955). It seems to us that the registrant has made out a prima facie case at least equal to others that have been held sufficient, e.g., Batterton v. United States, 260 F.2d 233 (8th Cir. 1958); Schuman v. United States, 208 F.2d 801 (9th Cir. 1953); United States v. Scott, 137 F.Supp. 449 (E.D.Wis.1956).
 
 
 19
 The board possesses broad investigative powers. It may subpoena any necessary witnesses, 32 C.F.R. 1621.15, and invoke the facilities of local, state and national welfare and governmental agencies, 32 C.F.R. 1621.14. Before this court, both parties referred to material which might have been helpful to the local board or the appeal board; e.g., appellant relied on Salkov, supra, which contains a detailed description of the functions of a cantor, and the Government brought to our attention a decision of the Department of Health, Education and Welfare, which incorporated the results of a survey of leading authorities of the three major branches of Judaism.[7] In cases such as this, involving difficult determinations of whether a complex of activities are sufficient to qualify for IV-D status, placing informed opinions before the local or appeal boards in a proper manner would seem desirable. Cf. Eagles v. United States ex rel. Samuels, 329 U.S. 304, 67 S.Ct. 313, 91 L.Ed. 308 (1946); United States ex rel. Goodman v. Hearn, 153 F.2d 186 (5th Cir.) cert. granted, 328 U.S. 833, 66 S.Ct. 1375, 90 L.Ed. 1608, case dismissed, 329 U.S. 667, 67 S.Ct. 24, 91 L.Ed. 589 (1946); United States ex rel. Trainin v. Cain, 144 F.2d 944 (2d Cir. 1944), cert. denied, 323 U.S. 795, 65 S.Ct. 439, 89 L.Ed. 635 (1945); United States ex rel. Levy v. Cain, 149 F.2d 338 (2d Cir. 1945).
 
 
 20
 In view of our decision we need not consider the other bases of appeal or the propriety of Judge Dooling's action on the motions made below. One claim deserves mention, however. The appeal board emphasized a 'concession' made by the Government Appeal Agent; the registrant argues that under these circumstances he was denied due process because the Agent filed his handwritten appeal on the registrant's behalf without consulting with him at all. An appeal agent is called upon 'To be equally diligent in protecting the interests of the Government and the rights of the registrant in all matters'[8] -- a demanding if not impossible obligation. See Note, The Selective Service, 76 Yale L.J. 160, 168-169 (1966). It has been suggested that an appeal agent tends to identify with the local board[9] and that most registrants are unaware that his service is available to them.[10] We do not know whether these criticisms are accurate, but at least as to the latter, the Selective Service System now commendably provides that:
 
 
 21
 Whenever a local board places a registrant in * * * I-A * * * it shall, at the time the Notice of Classification * * * is mailed, also inform the registrant that the Government Appeal Agent is available to advise him on matters relating to his legal rights, including his right of appeal.[11]
 
 
 22
 However, this does not deal with the problem presented here where apparently the registrant himself did not appeal (although his employer did) and the Appeal Agent took his own appeal in support of the registrant's position without consulting with him. Such a situation is probably unusual, but whether an appeal agent is protecting the interests of the Government or the rights of the registrant, it is essential that the registrant receive a copy of the memoranda submitted to the appeal board by the appeal agent and be given sufficient time in which to reply. In such a case, the registrant should be in no wrose position than if he had taken his own appeal; in the latter event, he has the right to file a statement on his own behalf before the appeal board. 32 C.F.R. 1626.12. 'The right to file a statement before the Appeal Board includes the right to file a meaningful statement, one based on all the facts in the file and made with awareness of the recommendations and arguments to be countered.' Gonzales v. United States, 348 U.S. 407, 415, 75 S.Ct. 409, 414, 99 L.Ed. 467 (1955). If a special theological panel had been set up to pass upon the validity of the registrant's claim to a IV-D exemption, he clearly would have had the right to examine its report in order to explain, correct, or deny it. Eagles v. United States ex rel. Samuels, 329 U.S. 304, 67 S.Ct. 313, 91 L.Ed. 308 (1946). A registrant should be given equal procedural safeguards when an appeal agent interposes his views as to a registrant's theological status.[12]
 
 
 23
 The writ of habeas corpus is granted and Stuart M. kanas is ordered released forthwith from the Army, without prejudice to whatever further classification procedures may be in order within the Selective Service System. See United States v. Jakobson, 325 F.2d 409, 417 (2d Cir. 1963), aff'd sub. nom. United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); United States ex rel. DeGraw v. Toon, 151 F.2d 778 (2d Cir. 1945); United States ex rel. Levy v. Cain, 149 F.2d 338, 342 (2d Cir. 1945).
 
 
 24
 Judgment reversed.
 
 
 
 [1]
 50 U.S.C.App. 456(g) provides:
 Regular or duly ordained ministers of religion * * * shall be exempt from training and service (but not from registration) under this title.
 50 U.S.C.App. 466(g) provides:
 (1) The term 'duly ordained minister of religion' means a person who has been ordained, in accordance with the ceremonial, ritual, or discipline of a church, religious sect, or organization established on the basis of a community of faith and belief, doctrines and practices of a religious character, to preach and to teach the doctrines of such church, sect, or organization and to administer the rites and ceremonies thereof in public worship, and who as his regular and customary vocation preaches and teaches the principles of religion and administers the ordinances of public worship as embodied in the creed or principles of such church, sect, or organization. (2) The term 'regular minister of religion' means one who as his customary vocation preaches and teaches the principles of religion of a church, a religious sect, or organization of which he is a member, without having been formally ordained as a minister of religion, and who is recognized by such church, sect, or organization as a regular minister. (3) The term 'regular or duly ordained minister of religion' does not include a person who irregularly or incidentally preaches and teaches the principles of religion of a church, religious sect, or organization * * *.
 
 
 [2]
 Arguably the registrant was eligible for a IV-D exemption as a divinity student during this period. However, his failure to claim such a status while in schoo. neither waived nor jeopardized his present claim
 
 
 [3]
 This test has recently been literally repeated in the statute. 50 U.S.C.App. 460(b)(3), as amended, Pub.L. No. 90-40, 8(c), 81 Stat. 100 (June 30, 1967)
 
 
 [4]
 We attach no importance to the difference in title between a 'cantor' and a 'Cantor and Musical Director.'
 
 
 [5]
 The Government contends that despite claims that the registrant has the right to conduct marriages, the law of Pennsylvania forbids it. See Purdon's Penna.Stats.Ann., Tit. 48, 1-13. In United States v. Burnett, 115 F.Supp. 141 (W.D.Mo.1953), inability to perform marriages was held irrelevant. In any case, in view of the basic evidentiary flaws in the record, we need not now resolve this question. We note, however, that on a SSS Form 127 received by the board in May 1967, the registrant states that he does officiate at marriages
 
 
 [6]
 In meeting his burden of presenting a prima facie case, registrant would have been well advised to do more than merely file SSS Form 127, with its short and general job description. However, he has done enough in the absence of any contradictory evidence
 
 
 [7]
 In re Gershon Ephros, S.S. Account No. nhw-vy-aoml(Decision of Appeals Counsel, March 11, 1965)
 
 
 [8]
 32 C.F.R. 1604.71(d)(5)
 
 
 [9]
 See Note, Fairness and Due Process Under the Selective Service System, 114 U.Pa.L.Rev. 1014, 1030 (1966)
 
 
 [10]
 See Note, The Selective Service System: An Administrative Obstacle Course, 54 Calif.L.Rev. 2123, 2148 (1966)
 
 
 [11]
 Selective Service System, National Headquarters, Local Board Memorandum No. 82 (as amended July 27, 1967)
 
 
 [12]
 That such a procedure is possible is supported by the language of the regulations dealing with Government Appeal Agents under the 1917 and 1940 Acts. In each case, the Agent was required to
 care for the interests of ignorant registrants * * * and, where the decision of the local board is against the interests ofsuch persons and where it appears that such persons may not take appeals, due to their own non-culpable ignorance, to inform them of their rights and assist them to enter appeals. * * *
 
 
 [32]
 C.F.R. 603.71(a) (Cum.Supp.1944); Selective Service Regulations 47 (1917). Interpreting an earlier part of this regulation, which directed agents to appeal deferments which should be reviewed, the New York City Director of Selective Service, Arthur C. McDermott, told Agents under his jurisdiction that
 In the interests of justice, it would seem only fair that when a Government Appeal Agent takes an appeal, he should notify the registrant and also furnish him with a copy of any memorandum submitted to the Appeal Board in support of the appeal in time to afford the registrant an opportunity to submit a memorandum in reply.
 New York City Selective Service Headquarters, Bulletin, No. 16 (January 30, 1941).