**UNITED STATES of America**

v.

**Emmanuel SINGLETON, Defendant.**

**No. 66 CR. 591.**

United States District Court
S. D. New York.

April 1, 1968.

Robert M. Morgenthau, U. S. Atty., by Asst. U. S. Atty. John R. Robinson, New York City, for plaintiff.

Edward Panzer, Legal Aid Society, New York City, for defendant.

MOTLEY, District Judge.

### OPINION

Defendant, Emmanuel Singleton, a registrant of Local Board #20, Poughkeepsie, New York, was classified in 1963, at age 18, as a conscientious objector (I-O) based upon his membership in the religious sect known as Jehovah's Witnesses. In January 1966, defendant was ordered to report for induction into the service to perform civilian work. Upon his failure to report in February, 1966, as directed, an information was filed against him. He was tried before this court on March 20, 1968. This court grants defendant's motion for a judgment of acquittal on the ground that the Local Board improperly refused to reopen defendant's classification upon his presentation of evidence which entitled him, prima facie, to exemption from all military service as a minister.

On May 16, 1963, defendant was classified I-O. In 1965, defendant's classification was reopened by the Local Board on its own motion, and, on April 15, 1965, defendant was again classified I-O. On July 12, 1965, Singleton was ordered to report for a physical examination. He reported for the examination and was found fit on August 8, 1965. On August 27, 1965, defendant was mailed a special form for I-O registrants upon which he was requested to specify 3 types of civilian work desired. Defendant returned the form listing two types of work de-

sired—ministerial work or teaching bible study classes.

At the time of his initial registration at age 18, defendant was unemployed; later he became and still is a truck driver. In September 1965, defendant was appointed to the position of Magazine and Territory Servant of the Poughkeepsie Congregation, West Unit. In October, 1965, the Local Board wrote to defendant asking him to select from among 3 designated types of civilian work to be performed by him at Rochester General Hospital. Defendant responded by letter dated October 27, 1965, in which he refused to perform any such work. He claimed he was an ordained minister of the Poughkeepsie Congregation of Jehovah's Witnesses. He requested that he be reclassified IV-D, requested a hearing, and offered to provide additional evidence of his ministerial status. He further informed the Board that he had received his assignment as a Magazine and Territory Servant from the Watchtower Bible & Tract Society, the governing body of Jehovah's Witnesses, and that a copy of his appointment letter would follow.

Late in October, three letters were sent to the Local Board. The first letter was a copy of a letter, on the stationery of the governing body of defendant's church, appointing Singleton a Magazine and Territory Servant. The second letter was a notarized "Certificate for Servant in Congregation" on the stationery of the Watchtower Society. It certifies that Singleton "is a duly ordained minister of Jehovah's Witnesses, engaged in preaching and teaching the principles of this Society * * *" It further states: "He presently officiates as an assistant presiding minister of the Poughkeepsie, New York Congregation * * *". The letter also informs the reader that Singleton has been the Magazine-Territory Servant since September and his duties in connection with this position. The letter continues:

"He also regularly and customarily engages in preaching and teaching the tenets and principles of Jehovah's Witnesses as a missionary evangelist. He is authorized to perform the ordinary rites and ceremonies recognized and employed by Jehovah's Witnesses. And he performs such other ministerial duties as are required of him as an assistant presiding minister."

The third letter is from the presiding minister of defendant's Congregation, Mr. Leo Shealy, to the Board. It says that Singleton attended at least five hours each week of bible classes and is "striving for a personal goal of no less than ten hours a month of house-to-house visitation on those in the community * * *". It further states that Singleton has been appointed assistant minister to Mr. Shealy. "His duties include not only taking the lead of others and instructing them in the ministry, but entails the oversight of the territories in the community to be visited and their thorough coverage with the approved sermons." He also sees that the magazines have proper distribution.

The Board summarily refused to reopen defendant's classification. Defendant was not granted a hearing or personal appearance before the Board and the Board never requested him to furnish the additional evidence which he has offered. The "Coordinator" of the Local Board determined in November that defendant's classification would not be reopened on the ground that the evidence submitted by defendant did not justify a reopening to consider a possible IV-D classification. On November 17, 1965, the Local Board, apparently following the advice of the "Coordinator", refused to reopen defendant's classification, although it had before it the three letters, defendant's letter claiming to be a minister, requesting a hearing and making his offer to provide additional support for his claim. It should be noted in this connection, that the failure to reopen defendant's classification meant that defendant could not appeal within the Selective Service System.

Defendant was ordered to appear before the Local Board on December 8, 1965. Believing that this appearance be-

fore the Local Board was to determine his ministerial status, defendant brought Mr. Shealy to the meeting with him. The Board, however, did not at that time examine defendant's ministerial status but instead asked him if he would accept civilian work.[1] Defendant again refused to accept civilian work.

Defendant was thereafter ordered to report for civilian work and, upon his failure to do so, claiming the right to a ministerial exemption, this prosecution was instituted.

■ Regular or duly ordained ministers of religion, as defined in 50 U.S.C. App. § 466(g), are exempt from training and civilian service in the Armed Forces. 50 U.S.C. App. § 456(g). This exemption is a narrow one and the registrant must bear the burden of establishing his right to it. In re Kanas, 385 F.2d 506, 508 (2d Cir. November 13, 1967).

■ Judicial review of Selective Service classification is extremely limited, Id. at p. 508; however, it may be obtained in a criminal prosecution to determine whether there is any basis in fact for the classification assigned to the registrant. 50 U.S.C. App. § 460(b) (3); see Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946).

In the *Kanas* case, supra, a case involving a claim to a ministerial exemption, the Court said, at p. 508:

> The task of the courts in cases such as this is to search the record for some affirmative evidence to support the local board's overt or implicit finding that a registrant has not painted a complete or accurate picture of his activities.
>
> \* \* \* \* \* \*
>
> But when the uncontroverted evidence supporting a registrant's claim places him prima facie within the stautory

exemption, dismissal of the claim solely on the basis of suspicion and speculation is both contrary to the spirit of the Act and foreign to our concept of justice. Dickinson v. United States, 346 U.S. 389, 396–397, 74 S.Ct. 152, 157–158, 98 L.Ed. 132 (1953).

■ Local boards are not free to disbelieve all evidence in the record in the absence of any impeaching or contradictory evidence. *Kanas*, supra, at p. 510. Each classification must be determined on its particular facts, not on the basis of any blanket characterization, Ibid.; see United States ex rel. Hull v. Stalter, 151 F.2d 633 (7th Cir. 1945). The test for a ministerial exemption is whether regularly, as a vocation, the registrant teaches and preaches the principles of his sect and conducts public worship in the tradition of his religion. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953); 50 U.S.C.App. § 466(g). The fact that defendant may be otherwise employed full-time, as in the case of many Jehovah's Witnesses' ministers who are not paid, is not conclusive of the issue. Wiggins v. United States, 261 F.2d 113, (5th Cir. 1958), cert. den. 359 U.S. 942, 79 S.Ct. 723, 3 L.Ed.2d 676 (1959), reh. den. 359 U.S. 976, 79 S.Ct. 874, 3 L.Ed.2d 843.

■ The evidence presented by defendant to the Board before its November 17, 1965 meeting made out a prima facie case of defendant's entitlement to the ministerial exemption, cf. Wiggins v. United States, supra, and there was no contravailing evidence before the Board on November 17, 1965 when it refused to reopen defendant's classification. Cf. *Kanas*, supra. The Board possesses broad investigatory powers to aid it in determining a registrant's proper classification. *Kanas*, supra; see, 32 C.F.R. §§ 1621.14, 1621.15. Singleton

---

1. Mr. Shealy testified that one member of the Board did come out of the room to ask him a question. Defendant testified the Board did not discuss his status as a minister. The Board apparently did not treat this as a "personal appearance" as provided for in the Code of Federal Regulations, Title 32, Chapter XVI, Part 1624, or as a reopening of his classification, as they failed to mail SSS Form No. 110, as required in such cases. 32 C.F.R. 1624.2(d).

offered to present additional evidence and brought Mr. Shealy to the Board meeting he thought was going to examine his claim to an exemption. This additional evidence the Board should have examined. *Kanas,* supra. Apparently, the Board refused to reopen defendant's classification on the basis that a Magazine and Territory Servant is not entitled to a IV-D exemption.

Since defendant had made out a prima facie case and offered additional evidence, the Board should have examined *his* claim to be a minister as defined in the statute. In re Kanas, supra. "Nothing appearing in the file to contradict or impeach the verity of defendant's claim \* \* \* as a minister, the primary classification by the Local Board was without factual foundation." United States v. Cotie, 114 F.Supp. 28 (W.D. N.Y.1953). As a result, a judgment of acquittal must be granted.

So ordered.