**UNITED STATES of America,**
**Appellee,**

v.

**Samuel Dale BITTINGER, III, Appellant.**

**No. 13317.**

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 6, 1969.

Decided Dec. 24, 1969.

Rehearing Denied March 26, 1970.

Edward D. Gasson, Fairfax, Va. (court-appointed counsel) for appellant.

C. P. Montgomery, Jr., Asst. U. S. Atty. (Brian P. Gettings, U. S. Atty., on the brief) for appellee.

Before SOBELOFF, WINTER, and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

Samuel Dale Bittinger, III, appeals his conviction for failing to report for civilian work, in violation of 50 U.S.C. App. § 462. Finding a lack of administrative due process, we reverse.

Bittinger became a Jehovah's Witness at the age of 12, and when he graduated from high school in 1967, he was classified as a conscientious objector. On July 5, 1968, Bittinger's local board ordered him to perform civilian work at a hospital. Bittinger went to the hospital on July 30, 1968, the effective date of the order, but he explained that he would not accept the work assignment because of his conscientious religious beliefs.

On November 12, 1968, Bittinger was indicted for failure to report for civilian work. At his trial he offered to prove that he was a minister at the time he was required to report for civilian work.[1]

The court ruled that this evidence was inadmissible because his status then could be determined only by the information contained in his Selective Service file. Cox v. United States, 332 U.S. 442, 453, 68 S.Ct. 115, 92 L.Ed. 59 (1947).[1] Upon review of the file, the court concluded there was a basis in fact for his classification as a conscientious objector. Since Bittinger readily admitted that he had refused to accept civilian work, his conviction followed.

Bittinger's Selective Service file, however, discloses procedural defects that we believe require reversal. On July 13, 1968—a week after the board ordered him to report for civilian work—Bittinger wrote the board describing himself, for the first time, as a full-time minister, and asking that his position be recognized.[2] The board, however, did not respond until September 4, 1968—more than a month after the date he had been scheduled to report for civilian work. Then the board wrote that since he had been mailed an order to report, and since the board found no change in status beyond his control, his case had not been reopened.[3]

We do not read the board's letter as a rejection of Bittinger's request because

---

1. Bittinger also offered to prove that he had undertaken additional ministerial duties after he was indicted. The district court ruled this evidence was immaterial. The district judge also declined to continue the case pending the results of an effort Bittinger made after indictment to secure a ministerial exemption. Bittinger complains of these rulings, but in light of our disposition of the case we find it unnecessary to review them.

2. The text of Bittinger's letter is:
    "In regard to the letter I received from you concerning civilian employment, it is with all due respect and appreciation for your position and what you are trying to do for me that I must decline and maintain a neutral status based on bible principles and conscience guidance.
    "I, as a full time minister have a very tight schedule which will not allow full time secular employment.
    "At the present I hold a parttime job which supplies me with only the basic

sustenance and coverings. My ministry consumes the foremost part of my time and efforts.
    "It would be appreciated if you would consider these things and recognize my position as a minister before Jehovah the Creator and issue me a minister's classification."

3. The text of the board's letter is:
    "Your case has again been considered; however, since you have been mailed an Order to Report for Civilian Work, and we did not find that there has been a change in your status resulting from circumstances over which you had no control, your case was not reopened.
    "In view of the above and since you are under a valid Order to Report for Civilian Work, it is your continuing duty from day to day to report under the order.
    "You are hereby directed to report under the order at once."

he failed to state a claim of sufficient merit for reopening his classification. Indeed, there can be no doubt that Bittinger made a prima facie case for reopening.[4] His Selective Service file discloses that previously he was engaged in full-time secular work as an automobile parts salesman, and he conducted his ministerial duties on a part-time basis. In contrast, his letter of July 13, 1968 stated that he was a full-time minister and that he had only a part-time secular job to provide him sustenance. Nothing in his file rebutted these allegations.

▮ A Jehovah's Witness who qualifies as a minister under the Act's definition is entitled to exemption.[5] Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953). Moreover, the exemption is not primarily for the benefit of the minister. Its basic purpose is to assure religious leadership to members of his faith. Fitts v. United States, 334 F.2d 416, 421 (5th Cir. 1964). The exemption is unconditional, and the statute does not specify when a registrant must qualify.

It is apparent the board declined to reopen Bittinger's classification because his request for a ministerial exemption came after he had been ordered to report for civilian work. But under pertinent regulations an order to report is not an absolute bar to reopening, and a classification can be reopened if the board finds a change in status resulting from circumstances beyond the registrant's control.[6]

▮ The board should not have denied reopening without first determining if in fact the change in Bittinger's status resulted from circumstances over which he had no control. It is well settled that a decision not to reopen a conscientious objector's classification upon his application for a ministerial exemption cannot be arbitrary or capricious. If the applicant makes out a prima facie case for a ministerial exemption, there must be a basis in fact for denying reopening. United States v. Ransom, 223 F.2d 15 (7th Cir. 1955); United States v. Majher, 250 F.Supp. 106 (S. D.W.Va.1966). Cf. United States v.

---

4. Cf. United States v. Singleton, 282 F. Supp. 762 (S.D.N.Y.1968); United States v. Majher, 250 F.Supp. 106 (S.D. W.Va.1966); United States v. Ransom, 223 F.2d 15 (7th Cir. 1955).

5. Title 50 U.S.C.App. § 456(g) provides in part:
   "Regular or duly ordained ministers of religion, as defined in this title * * * shall be exempt from training and service (but not from registration) under this title."

6. Title 32 C.F.R. § 1625.2 provides in part:
   "[T]he classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction * * * or an Order to Report for Civilian Work * * * unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control."
   Applying the regulation, we have held the board need not consider a claim of

conscientious objection first asserted after the registrant received an order to report. United States v. Helm, 386 F.2d 434 (4th Cir. 1967), cert. denied, 390 U.S. 958, 88 S.Ct. 1045, 19 L.Ed.2d 1153 (1968); United States v. Al-Majied Muhammad, 364 F.2d 223, 224 (4th Cir. 1966); United States v. Beaver, 309 F.2d 273, 277 (4th Cir. 1962). Accord, United States v. Banks, 413 F.2d 435 (5th Cir. 1969); United States v. Kroll, 400 F.2d 923 (3rd Cir. 1968), cert. denied, 393 U.S. 1069, 89 S.Ct. 728, 21 L.Ed.2d 713 (1969); United States v. Jennison, 402 F.2d 51 (6th Cir. 1968), cert. denied, 394 U.S. 912, 89 S.Ct. 1024, 22 L.Ed.2d 225 (1969); United States v. Schoebel, 201 F.2d 31 (7th Cir. 1953). Contra, United States v. Stafford, 389 F.2d 215 (2d Cir. 1968); United States v. Gearey, 368 F.2d 144 (2d Cir. 1966); Keene v. United States, 266 F.2d 378, 384 (10th Cir. 1959). See United States v. Stoppelman, 406 F.2d 127, 131 n. 7 (1st Cir.), cert. denied, 395 U.S. 981, 89 S.Ct. 2141, 23 L.Ed.2d 769 (1969).

Grier, 415 F.2d 1098 (4th Cir. 1969). We believe the substance of this commonsense rule should be applied when the board is called on to determine whether the change from conscientious objector to ministerial status is based on conditions over which the registrant had no control. The purpose of the regulation is not to arbitrarily foreclose the possibility of reopening. Its function is to assure that last minute changes in status, made at the whim of the registrant, will not interfere with the orderly procedures prescribed by the Act. The board is authorized to exercise wide discretion in weighing the reasons the status of one who claims to be a minister has changed, but it should act only on informed discretion.

Bittinger's Selective Service file discloses no information other than his letter of July 13 upon which the board could have acted. Unless Bittinger was utterly insincere—and nothing in the record shows he was—he should have been afforded an opportunity to be heard, or the board should have used its broad investigatory powers to ascertain the truth. The change from layman to cleric may lie beyond the registrant's control, for much depends on the duties to which the church assigns him. Furthermore, the call to a full-time vocation in the ministry comes to comparatively few men, and the reasons this call may be answered are too complex to be fathomed by perfunctory administrative decision.

We do not decide that Bittinger is entitled to a ministerial exemption, for this responsibility is placed upon the board. But the board must ascertain the facts before it acts. The plain language of the exemption and the Congressional purpose for its enactment will best be served by affording Bittinger an opportunity to present his claim to his local board. If it has merit, he should be granted the exemption. If not, the board may reassign him to civilian work.

Reversed.