**Gerson GROSFELD, Appellant,**

v.

**Dr. Harold P. MORRIS et al., Appellees.**

**Gerson GROSFELD, Appellant,**

v.

**Maj. James R. McCARTER et al., Appellees.**

**Nos. 14016, 14155.**

United States Court of Appeals, Fourth Circuit.

Argued April 10, 1970.

Decided Sept. 1, 1971.

Boreman, Circuit Judge, concurred in part, dissented in part and filed opinion.

Gaillard T. Hunt, Washington, D. C. (Elsbeth Levy Bothe, Baltimore, Md., on brief), for appellant.

Reed Johnston, Jr., Atty., Dept. of Justice (William D. Ruckelshaus, Asst. Atty. Gen., and Morton Hollander, Atty., Dept. of Justice, and Stephen H. Sachs, U. S. Atty. on brief), for appellees.

Before BOREMAN,* WINTER and CRAVEN, Circuit Judges.

WINTER, Circuit Judge:

As submitted to us, these two appeals required us to determine, with particular reference to the Supreme Court's decisions in Breen v. Selective Service Local Board No. 16, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970), and Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970), whether a local board may refuse to reopen a registrant's classification when presented with a prima facie claim for a deferment after an order for induction had issued, and, if not, whether such illegal board conduct may be challenged prior to the registrant's induction or prosecution for failure to submit to induction. No. 14,016 concerned a late request for a III–A hardship deferment. No. 14,155 concerned a belated crystallization of conscientious objection views.

After initial argument, we suggested rehearing en banc together with United States v. Collins, 445 F.2d 653 (4 Cir.

* Judge Boreman elected to take senior status on June 14, 1971, after submission of these appeals.

1971), which also presented the question of a claim of belated crystallization of conscientious objection views. Counsel then suggested that we defer disposition of the cases until the decision in Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971), which was then pending. *Ehlert* is now decided, and we have concluded to return the instant appeals to the original panel which heard them for decision. *Ehlert* was decided adversely to registrant and requires affirmance in No. 14,155. But in No. 14,016, we have concluded that there was illegal board conduct reviewable by pre-induction proceedings. In that case we, therefore, reverse and remand for further proceedings.

## I

The registrant, Gerson Grosfeld, was a college student from September, 1964, until June, 1968. For each of these four undergraduate years he requested and was granted a II–S student deferment. Upon graduation he was classified I–A. Thereafter, he entered the University of Arizona as a full-time graduate student and a part-time teaching assistant. On the basis of these positions, Grosfeld requested his board to grant him a II–S graduate student deferment or a II–A occupational deferment. His board treated these requests as an appeal from his I–A classification and forwarded them to the appeal board along with the rest of Grosfeld's file. The appeal board affirmed Grosfeld's I–A classification on December 5, 1968.

On March 26, 1969, Grosfeld received an order to report for induction on April 15, 1969. He immediately wrote to his board to request a I–S graduate deferment in order to finish the school year. The board refused this request for a change in classification but notified him that his actual induction would be de-

layed until June so he could complete his course of study.

Grosfeld then requested a III–A hardship deferment. In a letter to his board he claimed that he had just learned for the first time that his mother, who suffered from a serious disease, would be gravely affected by his induction. Thereafter, the board was supplied with evidence which tended to support his claim.[1] Almost two months later the board notified him that it had refused to reopen his classification to consider his claim for a III–A deferment. Simultaneously he was ordered to report for induction on August 12, 1969.

On August 5, Grosfeld instituted an action (No. 14,016) to compel his board to reopen his classification and consider the claims for deferments which he had advanced. The district court denied relief. It ruled that under § 6(h)(1) of the Selective Service Act of 1967, 50 U.S.C.A. App. § 456(h)(1), Grosfeld was not entitled to a I–S graduate deferment because he had requested and received an undergraduate II–S deferment and baccalaureate degree after the effective date of the Act.[2] The district court also held that judicial review of Grosfeld's claim to a III–A hardship deferment was barred by § 10(b)(3) of the Act, 50 U.S.C.A. App. § 460(b)(3).

## II

On August 11, 1969, Grosfeld wrote again to his local board—this time claiming that he was a conscientious objector due to religious training and belief. Thereafter, he filled out and filed Selective Service Form 150 in which he alleged an upbringing in Orthodox Judaism, his belief in the basic ethical tenets of that tradition, and his realization upon receipt of his induction order that he could not in conscience serve in any war. Simultaneously he filed letters from two

---

1. This evidence included letters from two physicians currently attending Mrs. Grosfeld.

2. Since Grosfeld requested on October 22, 1967, and received on November 7, 1967,

a II–S student deferment and graduated in June, 1968, he falls within the express terms of § 6(h)(1). The district court was, therefore, correct in its disposition of this issue.

close friends and four rabbis which attested to the sincerity of his beliefs. On October 6, 1969, the board held what it termed a "courtesy interview" at which it took sworn testimony from Grosfeld and his father. On November 22, 1969, the board refused to reopen and ordered Grosfeld to report for induction on December 3, 1969.

On November 25, 1969, Grosfeld filed a second action (No. 14,155) in the district court in which he alleged a number of irregularities including a claim that the board had wrongfully refused to reopen. The district court denied relief on the ground that § 10(b) (3) precluded pre-induction judicial review.

## III

■ In both actions, Grosfeld alleged that the district court had jurisdiction under the Mandamus and Venue Act of 1962, 28 U.S.C.A. § 1361, and the Federal Habeas Corpus Statute, 28 U.S.C.A. § 2241. In his second action he added 28 U.S.C.A. § 1331(a) as an alleged jurisdictional foundation. We need not consider, however, whether Grosfeld is now by virtue of his induction order "in custody" within the meaning of 28 U.S.C.A. § 2241(c) (1) or whether the $10,000 jurisdictional amount required by 28 U.S.C.A. § 1331(a) is present, because we consider § 1361 an adequate jurisdictional basis for these two actions. It provides that

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

■ Nor need we be concerned with the extent to which the traditional mandamus dichotomy between ministerial and discretionary administrative func-

tions survives in § 1361 as a limitation on judicial review. See *e. g.,* Byse & Fiocca, Section 1361 of the Mandamus and Venue Act of 1962 and "Nonstatutory" Judicial Review of Federal Administrative Action, 81 Harv.L.Rev. 308, 331–36 (1967); L. Jaffe, Judicial Control of Administrative Action, 181–82 (1965). That limitation on traditional mandamus relief reflected the policy that the judiciary should not control an administrative officer's valid exercise of a delegated power. Here, however, Grosfeld claims that his board has no authority under the Selective Service Act to refuse to reopen his classification, consider his new grounds for deferment, and permit him an administrative appeal from an adverse decision. If his argument is correct, judicial review would not interfere with the board's exercise of a legitimate discretionary power. Therefore, even under traditional mandamus principles, § 1361 confers jurisdiction to consider this claim. See Carey v. Local Board No. 2, 297 F.Supp. 252, 254–55 (D.Conn.), aff'd, 412 F.2d 71 (2 Cir. 1969) (per curiam).[3]

## IV

The main issue raised by these appeals concerns the government's argument that § 10(b) (3) of the Selective Service Act of 1967, 50 U.S.C.A. App. § 460(b) (3), deprived the district court of jurisdiction to review the board's actions prior to induction or attempted induction. Section 10(b) (3) provides:

> No judicial review shall be made of the classification or processing of any registrant by local boards * * * except as a defense to a criminal prosecution * * * after the registrant has responded either affirmatively or negatively to an order to report for induction. * * *

3. This case is distinguishable from United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371, 374–375 (2 Cir. 1968), cert. den., 394 U.S. 929, 89 S.Ct. 1195, 22 L.Ed.2d 460 (1969). There the plaintiff was a member of an Army Reserve unit which had been called to active duty. The court declined to review a discretionary decision of the military authorities because of the need for expedition in the military's administration of personnel subject to its jurisdiction.

In Oestereich v. Selective Service System Local Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968), the Supreme Court rejected a literal reading of this legislation as a flat bar on all pre-induction judicial review. It held that § 10(b) (3) did not bar pre-induction judicial review of a registrant's claim that his draft board had unlawfully ordered him to report for induction as a delinquent when he was entitled to the statutory exemption for students preparing for the ministry. Since the statutory exemption contained no indication that it could be denied for "delinquency," Oestereich's classification was "blatantly lawless" and, therefore, subject to pre-induction review.

Oestereich was followed by Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968). There the Court upheld the constitutionality of § 10(b) (3) and concluded that it barred pre-induction judicial review of a registrant's claim that his board had made an erroneous factual determination of his status as a conscientious objector. *Gabriel* distinguished *Oestereich* on the following ground:

> In *Oestereich* the delinquency procedure by which the registrant was reclassified was without statutory basis and in conflict with petitioner's rights explicitly established by the statute and not dependent upon an act of judgment by the board. Oestereich, as a divinity student, was by statute unconditionally entitled to exemption. Here, by contrast, there is no doubt of the board's statutory authority to take action which appellee challenges, and that action inescapably involves a determination of fact and an exercise of judgment.

393 U.S. at 258, 89 S.Ct. at 426.

The Supreme Court's recent decision in Breen v. Selective Service Local Board No. 16, *supra,* completes the current trilogy on § 10(b) (3). There the registrant claimed that his board had unlawfully ordered him to report for induction as a "delinquent" in the face of a statutory deferment for full-time college students to which he was entitled. Again the Court concluded that "a draft registrant who was required by the relevant law not to be inducted was in fact ordered to report for military service." 396 U.S. at 467, 90 S.Ct. at 666. Since the board's action constituted "clear departure * * * from its statutory mandate," pre-induction judicial review was not precluded. 396 U.S. at 467, 90 S.Ct. at 666, quoting from Oestereich v. Selective Service Local Board No. 11, 393 U.S. at 238, 89 S.Ct. 414.

In applying this pronounced exception to § 10(b) (3), lower federal courts have been faced with the problem of more closely defining its scope. Many of them have been disposed to adhere to a general test of "blatantly lawless" board action, placing little or no significance upon the type of challenge raised by the complaint. *E. g.,* Steiner v. Officer in Command, 436 F.2d 687, 690 (5 Cir. 1970); Fein v. Selective Service System Local Board No. 7, 430 F.2d 376, 379 (2 Cir. 1970), cert. granted, 401 U.S. 953, 91 S.Ct. 975, 28 L.Ed.2d 236 (1971). Others, however, have attached significance to the language in Clark v. Gabriel, *supra,* which distinguished between challenges to discretionary action and factual conclusions of a local board on the one hand, and challenges to a board's processing procedures on the other. Thus, in Bucher v. Selective Service System, 421 F.2d 24 (3 Cir. 1970), it was stated that:

> Section 10(b) (3) does not bar pre-induction judicial review where, as here, the validity of the Selective Service System's delinquency reclassification procedures is challenged on the grounds that they lack statutory authorization, and/or violate constitutional rights. *The Section bars pre-induction judicial review only where there is a challenge to the System's resolution of factual questions in the classification or processing of a draft registrant.* (emphasis supplied.)

421 F.2d at 27. See also, Liese v. Local Board No. 102, 440 F.2d 645 (8 Cir. 1971); Zerillo v. Local Board No. 102, 440 F.2d 136 (8 Cir. 1971); McClain v. Selective Service Local Board No. 47, 439 F.2d 737 (8 Cir. 1971);[4] Hunt v. Local Board No. 197, 438 F.2d 1128 (3 Cir. 1971) (opinions of Gibbons and Freedman, JJ.); Edwards v. Selective Service Local Board No. 111, 432 F.2d 287 (5 Cir. 1970) (dissenting opinion, Tuttle, J.); Fein v. Selective Service System Local Board No. 7, *supra* (dissenting opinion, Lumbard, C. J.); Nestor v. Hershey, 138 U.S.App.D.C. 73, 425 F.2d 504 (1969).

■ We accept the distinction recognized in these latter authorities. Taken collectively, we think that *Oestereich, Gabriel* and *Breen* establish the rule that § 10(b) (3) does not bar pre-induction judicial review of a claim that a board's classification procedure is without statutory authorization and, therefore, illegal, where the classification procedure involves neither a determination of fact nor an exercise of judgment.[5] Thus, we must proceed to determine whether Grosfeld's allegations of illegal board conduct have merit, and, if so, whether pre-induction review is permitted under the exception to § 10(b) (3) as defined.

## V

For simplicity, it is perhaps best first to consider and decide No. 14,155—the belated conscientious objector claim.

Registrant's theory of the action is that he *alleged* a prima facie claim of conscientious objection constituting a change in his circumstances over which he had no control, that the board was, therefore, required to reopen and reconsider his classification, and that the board's failure to do so constituted the type of unlawful action which entitled the registrant to pre-induction judicial review.

■ Ehlert v. United States, *supra,* demolished an essential link in registrant's chain of argument, because it held that a local board is not required to reopen to consider a claim of conscientious objection when the claim is first lodged after issuance of an order to report for induction. Under such circumstances, the Court held, the registrant should report for induction and seek discharge under military regulations as a conscientious objector. It necessarily follows in the instant case that registrant can gain nothing from pre-induction review of valid board action, and the district court's denial of relief in No. 14,155 will be affirmed. See United States v. Collins, *supra;* United States v. McKee, 446 F.2d 974 (4 Cir. 1971).

## VI

■ In the remaining appeal (No. 14,-016), Grosfeld alleged that he presented the board with a prima facie case for entitlement to a III–A hardship deferment and that it was illegal for the board to refuse to reopen his classification. The

4. I. Where the registrant challenges the Local Board's resolution of issues of evidentiary fact, Section 10(b) (3) plainly precludes pre-induction review.

    II. Where the underlying evidentiary facts are not in dispute and the registrant's claim is cast as a challenge to the legality of the Selective Service System's reading or application of relevant law, then the court may afford pre-induction review only if on investigation of the merits of the issue presented it determines that the Board acted in a "blatantly lawless" manner. 439 F.2d at 740.

5. Our recent decision in Blatt v. Local Board No. 116, 443 F.2d 304 (4 Cir.

1971), is not inconsistent with this conclusion. While there we assumed procedural error for purposes of deciding the case, we stressed that the ultimate question involved was "whether Blatt is physically disqualified—a fact question resolved on conflicting medical opinions by the local board, * * *" We went on to hold that "[t]he exception to 10(b) (3) discerned in *Oestereich* and *Breen* is not one that allows pre-induction review, under the guise of correcting procedural irregularity, of purely fact issues committed to the sound discretion and judgment of the local board." 443 F.2d at 307.

regulation dealing with reopening a registrant's classification reads as follows:

> The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant * * * if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; * * * provided * * * the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction * * * unless the local board first specifically finds there has been a change in circumstances over which the registrant had no control.

32 C.F.R. § 1625.2. Thus, a local board may reopen on the basis of a post-induction order request if three elements are present: (1) new facts not previously before the board are alleged, (2) these new facts, if true, would be sufficient to justify a change in classification, and (3) these new facts have arisen from circumstances beyond the control of the registrant.

■ Grosfeld's request for a III–A hardship deferment satisfied all three of these conditions. It is not disputed that the information concerning his mother's condition was not previously before the board. The facts, if true, would justify a change in classification. 32 C.F.R. § 1622.30(a) provides that:

> In class III–A shall be placed any registrant whose induction in the armed forces would result in extreme hardship (1) to his * * * parent * * * who is dependent on him for support. * * *

And 32 C.F.R. § 1622.30(d) indicates that the dependency can be "based upon other than financial considerations." Lastly, the new facts were clearly a result of circumstances beyond Grosfeld's control. The record is devoid of the faintest suggestion that Grosfeld knew of the alleged effect on his mother of his induction prior to issuance of the order to report. In Ehlert v. United States, *supra,* the Supreme Court, while recognizing as binding an administrative interpretation that a claim of conscientious objection could never be beyond the registrant's control, stated that "[i]t is clear that the regulation was meant to cover at least such nonvolitional changes as injury to the registrant or death in his family making him the sole surviving son." 402 U.S. at 104, 91 S.Ct. at 1323. The Court went on to approve the government's view of the regulation as applying to "those 'objectively identifiable' and 'extraneous' circumstances that are most likely to prove manageable without putting undue burdens on the administration of the Selective Service System." 402 U.S. at 105, 91 S.Ct. at 1324. Grosfeld's allegations concerning the condition of his mother met this standard.

■ Under Mulloy v. United States, *supra,* it is now established that, in the case of a request for reclassification made prior to the issuance of an induction order, a local board may not refuse to reopen a registrant's classification when presented with allegations which prima facie satisfy the reopening requirements of 32 C.F.R. § 1625.2, notwithstanding that the regulation is couched in discretionary terms. See also, e. g., United States v. Grier, 415 F. 2d 1098 (4 Cir. 1969). In *Mulloy,* a unanimous Court placed great emphasis on the fact that, under the regulations, a refusal to reopen, unlike a refusal to reclassify after reopening, is not subject to review within the Selective Service System.

> Where a registrant makes nonfrivolous allegations of facts that have not been previously considered by his board, and that, if true, would be sufficient under regulation or statute to warrant granting the requested reclassification, the board *must* reopen the registrant's classification unless the truth of these new allegations is conclusively refuted by other reliable information in the registrant's file.

\* \* \* For in the absence of such refutation there can be no basis for the board's refusal to reopen except an evaluative determination adverse to the registrant's claim on the merits. *And it is just this sort of determination that cannot be made without affording the registrant a chance to be heard and an opportunity for an administrative appeal.* (emphasis supplied.)

398 U.S. at 416, 90 S.Ct. at 1771, 26 L.Ed.2d 362.

■ We can discern no convincing reason why the *Mulloy* rule is not also applicable to the case of a request for reclassification made after an induction order has issued. The only difference between the two situations under the regulations is that, in the case of a post-induction order claim, an additional condition must be satisfied in order to establish a prima facie case; i. e., there must be nonfrivolous allegations indicating that the new facts arose from circumstances beyond the registrant's control. Certainly, the importance of administrative review, stressed in *Mulloy*, is not diminished by the fact that an induction order has issued.

In the instant case, after making his request for reclassification, Grosfeld was granted a "courtesy hearing." The notations on SSS Form 119, the board's memorandum of this "hearing," strongly suggest that Grosfeld's claim was rejected on the merits:

*Hardship*

Mother has ailment of 12 yrs standing—during this time registrant [had a student deferment] \* \* \* From our conversation with Reg[istrant] there did not seem to be any extensive change in Mother's condition during his absence in [school]

\* \* \* \* \* \*

We see no reason to grant hardship on basis of information developed at this hearing.

\* \* \* \* \* \*

As pointed out in *Mulloy*, it is precisely these factual determinations which, if reached, must, under the Act, be subjected to the registrant's right to administrative review.[6]

In accord with our view of the scope of *Mulloy* is the decision in United States v. Foster, 439 F.2d 29, 33 (9 Cir. 1971). Paszel v. Laird, 426 F.2d 1169 (2 Cir. 1970), is to the contrary, but it was decided prior to *Mulloy*. However, United States v. Jones, 433 F.2d 1292 (2 Cir. 1970), would indicate to the contrary, but we are not persuaded to follow it. Our view is supported also by our prior decision in United States v. Bittinger, 422 F.2d 1032 (4 Cir. 1969), which dealt with a post-induction order request for reclassification. There we held that a board could not refuse to reopen on the ground that the new facts did not arise from circumstances beyond the registrant's control without making an informed determination to this effect. We

---

6. Unlike the premise for decision in *Ehlert, supra,* registrant, having been inducted, could not obtain discharge on the ground of "dependency" or "hardship." In the Army's Regulations, these terms are not precisely defined. But 32 CFR § 582.-2(b) (1) restricts discharges for "dependency" to death, or disability of a member of an enlisted person's family "occurring *after* his entry into the service." (emphasis supplied.) "Hardship," it is recognized in 32 CFR § 582.2(b) (2), may "have arisen *after or as a result of* (emphasis supplied.) his [an enlisted person] entry into active military service," but "hardship" seems to be limited to financial hardship. See 32 CFR § 582.-2(b) (2) (iv). Presumably, Grosfeld

could submit to induction and then seek release by writ of habeas corpus, but if his allegations regarding the effect on his mother are true, the damage may well be done before relief could be granted. Also, presumably, Grosfeld could refuse induction and defend a prosecution on the ground of the board's lawless action, but we are loath to believe that this would be Grosfeld's only avenue to relief (Breen v. Selective Service Board, 396 U.S. at 468, 90 S.Ct. 661, 24 L.Ed.2d 653) for, as pointed out in *Ehlert, supra,* 402 U.S. at 104, 91 S.Ct. at 1323, the regulation permitting reopening after a notice to report for induction was intended to cover some nonvolitional changes of circumstances.

recognized that "[t]he purpose of the regulation is not to arbitrarily foreclose the possibility of reopening," but rather to assure "that last minute changes in status, made at the whim of the registrant, will not interfere with the orderly procedures prescribed by the Act." 422 F.2d at 1035. For the same holding see Scott v. Commanding Officer, 431 F.2d 1132 (3 Cir. 1970); United States ex rel. Brown v. Resor, 429 F.2d 1340 (10 Cir. 1970).

## VII

Since we have concluded that the board illegally refused to reopen Grosfeld's classification on the basis of his request for a III–A deferment, the remaining question is whether such illegal conduct is subject to pre-induction judicial review under the exception to § 10(b)(3) discussed above. We hold that pre-induction review is available. Manifestly, whether a registrant alleges a prima facie case of entitlement to a different classification is a question of law which is not affected by resolutions of fact or exercise of judgment by the local board. Under the *Mulloy* rule, all that is required is that the registrant's request be examined to determine whether the allegations meet the reopening standards set by the regulations. In reviewing a board's decision to reopen or not reopen, a court would be doing no more than testing the legal sufficiency of the facts alleged, the same function performed pursuant to a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Hunt v. Local Board No. 197, 438 F.2d at 1136–1137 (opinion of Gibbons, J.).

Furthermore, we are convinced that a board's violation of the *Mulloy* rule is "blatantly lawless" within the meaning of *Oestereich* and *Breen*. If a prima facie case is not alleged, obviously a board is not required to reopen. If, on the other hand, a prima facie case is alleged, *Mulloy* requires the board to reopen to make its resolutions of fact, its conclusions as to credibility, and its ultimate decision as to entitlement to a change in classification, all of which may be required to undergo the scrutiny of administrative review. Where, however, a board refuses to reopen in the face of a prima facie case, there are only two conceivable explanations for the decision. On the one hand, the decision could be completely arbitrary. This possibility was recognized in United States v. Bittinger, *supra*, where, despite the board's professed reason that the change in circumstances was not beyond the registrant's control, we said that "[i]t is apparent the board declined to reopen Bittinger's classification because his request for a ministerial exemption came after he had been ordered to report for civilian work." 422 F.2d at 1034. The only other possible explanation would be that the board's decision is based on factual and credibility resolutions which amount to a decision on the merits, a decision which, under the statute and the regulations, must be subject to administrative review. It seems clear to us that this is what occurred in the instant case. Arbitrary decisions and procedural techniques which cut off rights to administrative review of determinations otherwise reviewable are within the purview of a standard of "blatant lawlessness."

Admittedly, we have found no reported case holding that a local board's breach of the *Mulloy* rule is subject to pre-induction review. We find support, however, in Liese v. Local Board No. 102, *supra;* Zerillo v. Local Board No 102, *supra;* McClain v. Selective Service Local No. 47, *supra*; Fein v. Selective Service System Local Board No. 7, *supra* (dissenting opinion, Lumbard, C. J.)·; Hunt v. Local Board No. 197, *supra* (opinions of Gibbons and Freedman, JJ.); Edwards v. Selective Service Local Board No. 111, *supra* (dissenting opinion, Tuttle, J.). The latter two authorities argue for exactly the position we take here.

On the other hand, the following authorities denying pre-induction review may be construed to the contrary: Steiner v. Officer in Command, *supra;* Fer-

rell v. Selective Service Local Board No. 38, 434 F.2d 686 (2 Cir. 1970); Edwards v. Selective Service Local Board No. 111, *supra* (majority opinion); Bookout v. Thomas, 430 F.2d 1343 (9 Cir. 1970); Sloan v. Local Board No. 1, 414 F.2d 125 (10 Cir. 1969). Most of these cases are distinguishable, however. For example, in *Sloan* the registrant objected to the local board's refusal to reopen his classification on the basis of a claim of conscientious objection lodged prior to the issuance of an induction order. It appears, however, that this claim was in fact subjected to administrative review, so that in effect there was no refusal to reopen.[7] Furthermore, *Sloan* was decided prior to *Mulloy*. Both *Ferrell* and *Steiner* involved post-induction order claims of conscientious objection. As has been noted, the administrative interpretation of 32 C.F.R. § 1625.2 approved by the Supreme Court in Ehlert v. United States, *supra,* makes it impossible to allege a prima facie case of conscientious objection based on views first maturing after such an induction order has issued. The other late claim in *Steiner* was a III–A hardship claim which had previously been asserted and denied after an administrative appeal, and thus the mere reassertion of the claim did not amount to new facts not previously considered. And in *Edwards*, the court specifically noted that the registrant's claim of an occupational deferment did not state a prima facie case. 432 F.2d at 295.[8]

In No. 14,155, the order of the district court is affirmed. In No. 14,016, we reverse the judgment of the district court and remand for entry of an order requiring the board to reopen Grosfeld's classification and to determine his entitlement to a III–A deferment.

No. 14,016, reversed and remanded.

No. 14,155, affirmed.

BOREMAN, Circuit Judge (concurring in part and dissenting in part):

In holding that the registrant, Gerson Grosfeld, is entitled to preinduction judicial review of his local board's refusal to grant him his claimed hardship deferment classification or to reopen his I–A classification to consider such claim, the majority seems to ignore the clear Congressional mandate of § 10(b) (3) of the Selective Service Act of 1967, 50 U.S.C.App. § 460(b) (3), as well as the explicit teachings of Breen v. Selective Service Board, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970); Oestereich v. Selective Service System Local Bd., 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968); and, especially, Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968). Further, the majority ignores the clear implications of a recent decision by a panel of this court. Blatt v. Local Board No. 116, 443 F.2d 304 (4 Cir. 1971). Therefore, I feel constrained to note my dissent as to that portion of the majority decision.

Section 10(b) (3) provides, in pertinent part:

"No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title * * *, after the registrant has responded either affirmatively or negatively to an order to report for induction, * * *."

As the majority correctly observes, in *Oestereich, supra,* the Supreme Court rejected a literal reading of this section as a complete bar to all preinduction judicial review; the Court held that § 10(b) (3) did not bar such review of a registrant's claim that his local board

---

7. A form given to those claiming conscientious objector status was provided Sloan which he completed and filed with the local board. The board reviewed the additional information contained in the form and voted 5–0 not to reopen the I–A classification determination. Sloan's file was then forwarded to the appeal board and the I–A classification was affirmed by a 5–0 vote. 414 F.2d at 126.

8. To the same effect is our decision in Blatt v. Local Board No. 116, *supra,* where a prima facie case was not alleged because no new evidence was presented to the board by the registrant.

had *unlawfully used delinquency regulations to reclassify* him I–A and to order him to report for induction when he was unequivocally entitled to a *statutory exemption* for students preparing for the ministry.

In *Breen, supra,* the Court extended preinduction judicial review to a registrant whose local board had unlawfully used delinquency regulations to remove his II–S student deferment to which he was clearly entitled *by statute,* to classify him I–A and order him to report for induction, rejecting the Government's contention that the *Oestereich* decision was distinguishable because Oestereich had shown entitlement to a *statutory exemption* while Breen was qualified only for a *statutory deferment.* The Court stated that it could not see " * * * any relevant practical or legal differences between exemptions and deferments." Breen v. Selective Service Board, 396 U.S. 460, at 466, 90 S.Ct. 661, at 665, 24 L.Ed.2d 653.

Thus, under *Oestereich* and *Breen,* § 10(b) (3) does not bar preinduction judicial review whenever a registrant has shown that he was *clearly entitled to a statutory exemption or deferment* and that his local board defied the statutory mandate by unlawfully *using delinquency* procedures to classify him I–A and order him to report for induction.

However, a registrant is not entitled to preinduction judicial review whenever the classification determinations which he challenges involve an exercise of the local board's judgment and discretion. This distinction was clearly made by the Supreme Court in *Gabriel, supra,* wherein the Court held that a registrant seeking classification as a conscientious objector whose local board had denied his claim, classified him I–A and ordered him to report for induction, was barred by § 10(b) (3) from seeking preinduction judicial review because a local board's determinations as to conscientious objection involve an exercise of the board's judgment and discretion. The Court concluded that permitting preinduction judicial review of such discretionary classification determinations would result in delays and interruptions in the Selective Service System such as Congress sought to prevent when it enacted § 10(b) (3).

In distinguishing *Oestereich,* the Court in *Gabriel* said:

"In *Oestereich* the delinquency procedure by which the registrant was reclassified was *without statutory basis* and in conflict with petitioner's rights *explicitly established by the statute and not dependent upon an act of judgment by the board.* Oestereich, as a divinity student, was *by statute unconditionally entitled to exemption.* Here, by contrast, there is no doubt of the board's statutory authority to take action which appellee challenges, and *that action inescapably involves a determination of fact and an exercise of judgment.* By statute, classification as a conscientious objector is expressly conditioned on the registrant's claim being 'sustained by the local board.' 50 U.S.C. App. § 456(j) (1964 ed., Supp. III).

"Here the Board has *exercised its statutory discretion* to pass on a particular request for classification, 'evaluating evidence and * * * determining whether a claimed exemption is deserved.' Oestereich v. Selective Service System Local Bd., *supra,* [393 U.S. at 238, 89 S.Ct. 414]." (Emphasis added.) Clark v. Gabriel, 393 U.S. 258, 89 S.Ct. 426.

Thus, if the classification determinations challenged by Grosfeld are dependent upon an exercise of judgment by his local board, rather than determinations which are statutorily mandated, he is barred from preinduction judicial review by the provisions of § 10(b) (3).

Read narrowly, *Oestereich* and *Breen* stand only for the proposition that preinduction judicial review is available where a registrant has already been given the classification to which he is unquestionably statutorily entitled, but then is deprived of this classification by his local board's unlawful resort to delinquency

procedures to reclassify the registrant in I–A and to order him to report for induction. In the instant case, there was no involvement of procedures which prompted the Supreme Court to denounce the improper use of delinquency regulations to remove statutorily mandated deferments or exemptions. *See* Bookout v. Thomas, 430 F.2d 1343 (9 Cir. 1970), in which the court distinguished *Oestereich* and *Breen* solely upon the basis that Bookout's local board had not used delinquency procedures to move him from another classification into I–A classification and to order him to report for induction.

The majority here, however, takes a broader view of the teachings of the Supreme Court, stating, "Taken collectively, we think that *Oestereich, Gabriel* and *Breen* establish the rule that § 10(b) (3) does not bar pre-induction judicial review of a claim that a board's classification procedure is without statutory authorization and, therefore, illegal, where the classification procedure involves neither a determination of fact nor an exercise of judgment." Assuming, *arguendo*, that *Oestereich, Gabriel* and *Breen* may be so read, I cannot accept my brothers' application of this principle to the facts of the instant case. All of the classification procedures involved in this case (hardship deferment, conscientious objector exemption, student deferment, and reopening of a classification) have authorization either by statute or by regulation, but the pertinent issue here is whether the board's action was discretionary or explicitly mandated. Since *Gabriel* dictates that a registrant may have preinduction judicial review only if the local board's action was a clear departure from its statutory mandate, Grosfeld is entitled to such review only if the local board was statutorily required to reopen his classification and only if there was no room for his local board to exercise its judgment and discretion in deciding whether or not to reopen. I conclude that reopening this registrant's classification is not statutorily compelled as the questions arising in con-

nection therewith require, or, at least, permit the local board to exercise its judgment and discretion.

Mr. Justice Harlan's concurring opinions in *Oestereich*, 393 U.S. at 239, 89 S.Ct. 414, 21 L.Ed.2d 402, and *Breen*, 396 U.S. at 468, 90 S.Ct. 661, are the source of the broad interpretation here given those cases by the majority as indicated by citing Bucher v. Selective Service System, 421 F.2d 24 (3 Cir. 1970), in the majority opinion. But the majority cannot, at the same time, ignore or brush aside Mr. Justice Harlan's statement in *his concurring opinion in Oestereich*, 393 U.S. at 240, 89 S.Ct. at 417, that § 10(b) (3) barred preinduction judicial review of "the numerous discretionary, factual, and mixed law-fact determinations which a Selective Service Board must make prior to issuing an order to report for induction." In my view, a decision by Grosfeld's local board whether or not to reopen this registrant's file is just such a determination.

32 C.F.R. § 1625.2 establishes the procedure to be followed by local boards in deciding whether to reopen a registrant's classification; it provides:

> "The local board *may* reopen and consider anew the classification of a registrant (a) upon the written request of the registrant, * * * if such request is accompanied by written information *presenting facts* not considered when the registrant was classified, *which, if true, would justify a change in the registrant's classification*; * * * provided, * * * the classification of a registrant *shall not* be reopened after the local board has mailed to such registrant an Order to Report for Induction * * * *unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control.*" (Emphasis added.)

Thus, reopening cases necessarily present situations requiring case by case determinations based on the particular facts presented in each instance. Further,

where, as here, a registrant has been issued an induction order, the classification shall not be reopened unless the board "specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control." Grosfeld's local board made no such finding as is required before reopening is authorized by the regulation.

The majority's speculative statements as to the reasoning behind the local board's refusal to reopen Grosfeld's classification only serve to prove the point that reopening determinations necessarily involve factual resolutions and discretionary decisions by local boards; thus, such procedures squarely fall within the rationale of *Gabriel* that preinduction judicial review of such determinations is barred by § 10(b) (3). The multitude of factual resolutions which a local board must make in deciding whether or not to reopen a registrant's classification include: whether the registrant has presented evidence which, if true, would justify a change in his classification; whether such information has been previously considered by the local board; whether the facts presented by a registrant after receipt of his notice to report for induction show a change in status; whether such an asserted change in status was beyond the control of the registrant; and, ultimately, whether the registrant has presented a prima facie claim. These matters are hard factual issues and mixed law-fact determinations which obviously require the exercise of judgment and discretion. A local board's action in refusing to reopen "inescapably involves a determination of fact and an exercise of judgment," which is precisely the type of determination which *Gabriel* held barred from preinduction judicial review by § 10(b) (3).

The majority correctly observes that the district court was clearly correct in holding that Grosfeld was not entitled to a I–S deferment because he fell within § 6(h) (1) of the Selective Service Act of 1967, 50 U.S.C. App. § 456(h) (1), which disallows a subsequent student deferment or occupational deferment to any registrant who has previously requested and received a student deferment and a baccalaureate degree after the effective date of the statute. The majority also correctly holds, and I readily concur, that the basis of Grosfeld's conscientious objector claim has been foreclosed by Ehlert v. United States, 402 U.S. 99, 91 S. Ct. 1319, 28 L.Ed.2d 625 (1971). Thus, the only claim remaining for consideration is that of entitlement to a III–A hardship deferment classification.

Statutory recognition of the hardship deferment appears in § 6(h) (2) of the Act, 50 U.S.C. App. § 456 (h) (2), which provides, in pertinent part:

"The President is also authorized, under such rules and regulations as he may prescribe, to provide for the deferment from training and service in the Armed Forces (1) of any or all categories of persons in a status with respect to persons (other than wives alone, except in cases of extreme hardship) dependent upon them for support which renders their deferment advisable, * * *"

This statute merely "authorized" the President to effectuate "under such rules and regulations as he may prescribe" hardship deferments which he considers "advisable." The deferment is specifically and obviously discretionary as was the conscientious objector exemption involved in *Gabriel,* and is not statutorily mandated as were the ministerial exemption in *Oestereich* and the II–S student deferment in *Breen.*

The two regulations promulgated by the Selective Service System which the majority construes as defining the hardship deferment, 32 C.F.R. § 1622.30(a) and 32 C.F.R. § 1622.30(d), do not with any particularity *define* a hardship deferment to the degree that it could reasonably be considered mandatory and therefore within *Oestereich* or *Breen.* 32 C.F.R. § 1622.30(a) provides that in Class III–A should be placed any registrant whose induction would result in extreme hardship to a parent who is de-

pendent upon the registrant for support; Grosfeld clearly does not allege that his mother is dependent upon him for support, but instead merely claims that his induction would be injurious to her health. 32 C.F.R. § 1622.30(d) does indicate that dependency may be based upon other than financial considerations, but there is no explanation whatsoever as to what such other considerations might be. Thus, there are no clear statutory or regulatory commands to indicate when a hardship deferment is to be granted by a local board, and the deferment classification is clearly discretionary. In these circumstances, the board must evaluate the evidence and determine, in its discretion, whether the claimed deferment is deserved.

Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970), accepted by the majority here as supporting its view, provides no valid escape from the terms of § 10(b) (3). In *Mulloy*, the Supreme Court held that the reopening regulation did not give local boards discretion to *arbitrarily* refuse to reopen a registrant's classification and thereby cut off his right to an administrative appeal. However, the Court clearly agreed that reopening determinations are discretionary, as the Court stated:

> "While differing somewhat in their formulation of precisely just what showing must be made before a board is required to reopen, the courts of appeals in virtually all Federal Circuits have held that where the registrant has set out new facts which establish a prima facie case for a new classification, a board must reopen to determine whether he is entitled to that classification. Not to do so, these courts have held, is an *abuse of discretion,* and we agree." (Emphasis added.) 398 U.S. at 415–416, 90 S.Ct. at 1770.

Thus, while the Court held that a local board must reopen when presented with a prima facie case, the Court made it clear that a local board's determination as to whether a prima facie case has been made out by a registrant and therefore whether to reopen are questions requiring the local board to exercise its discretion. The Court, in *Mulloy,* merely reviewed, after a prosecution for refusal to submit to induction, the local board's exercise of discretion and found that the refusal to reopen was an abuse of discretion. Since *Mulloy* involved a situation in which there had already been a prosecution for refusing to submit to induction, there was no right to preinduction judicial review and § 10(b) (3) was inapplicable.

*Mulloy* merely stands for the proposition that a local board may not abuse its discretion by arbitrarily refusing to reopen a registrant's classification, and that a local board's refusal to reopen is subject to judicial review *following induction or prosecution for failure to be inducted or to report for civilian work.* It certainly does not go so far as to hold that a local board has *no* discretion in deciding whether or not to reopen the registrant's classification, nor does it approve preinduction judicial review of a board's refusal to reopen.

It is, however, the essence of the majority's holding today that a local board's breach of the *Mulloy* rule is subject to preinduction judicial review. While admitting that no authority can be found which directly so holds, my brothers search the precedents of other circuits for support for this novel proposition. In my view, such a search is wholly unnecessary. The question has been decided in this circuit, contrary to the position of the majority in the instant case, in Blatt v. Local Board No. 116, 443 F.2d 304 (4 Cir. 1971).

In *Blatt*, the registrant (Blatt) had a medical history of nasal allergy and had so noted on his classification questionnaire when he first registered with his local board. While in college and classified II–S (student deferment), he submitted additional information to his board concerning his allergic condition including two letters from his physicians. Subsequently, Blatt was classified I–A, passed a preinduction physical examina-

tion, and was issued an order to report for induction. He then submitted additional letters from his doctors emphasizing the severity of his allergic condition. Furthermore, he received a complete ear, nose and throat examination at the Armed Forces Entrance and Examining Station. Pursuant to the examining physician's recommendation of "reconsideration in this case before induction into the service," the Army again reviewed Blatt's medical record; he was again found qualified for induction. Blatt then filed more letters and was granted a hearing and a medical interview by the local board. Ultimately, the board declined to reopen his case on the finding that Blatt had presented no new evidence on which to base a reopening. The district court, being of the opinion that Blatt was denied procedural due process, enjoined his induction. On appeal by the Government, this court reversed on the ground that § 10(b) (3) barred preinduction judicial review of Blatt's case.

One of the procedural irregularities with which Blatt charged his board was that it assertedly should have reopened his classification under 32 C.F.R. § 1625.-2, *supra*, thus permitting Blatt an administrative appeal. This is precisely the error with which Grosfeld's local board is charged by the majority in the instant case. The *Blatt* court, however, declined to reach the merits of Blatt's claim, stating that the prohibition of § 10(b) (3) was "about as flat as the Congress could make it," and pointed out that before preinduction judicial review could be available, "[t]he proper classification of the registrant must be obvious, if not uncontroverted * * *." The court characterized the "underlying issue" presented by Blatt to be "not one of law, despite Blatt's effort to frame it as a purely legal and procedural question, but * * * simply whether Blatt is physically disqualified * * *." The court stated:

"We cannot say, as in *Oestereich* and *Breen, even assuming procedural irregularity*, that Blatt is clearly entitled to a medical disqualification. *Since his medical condition is not clear, his claims must await adjudication until offered as a defense to a criminal action for refusing induction, or by way of habeas corpus after stepping forward.*" (Emphasis added.) 443 F.2d at 307.

I find the underlying issue of the instant case to be simply whether Grosfeld is entitled to a hardship deferment, an issue involving factual determinations and the exercise of discretion and judgment by his local board. Applying the teachings of *Blatt*, since it cannot be said, even assuming procedural irregularity, that Grosfeld is clearly entitled to a hardship deferment, I reach the conclusion that his claims must await adjudication until offered as a defense to a criminal action for refusing induction, or by way of habeas corpus after his induction.

The majority's attempt in footnote 8 of its opinion to distinguish *Blatt* on the ground that there was not a prima facie case for the desired classification presented in that case is not persuasive. The majority's footnote implies that the *Blatt* court agreed with and confirmed the local board's determination that there was no new evidence presented by Blatt, there was no prima facie case presented, and, therefore, there was no need to reopen Blatt's file. It is my reading of the *Blatt* decision, however, that the determination of the local board that there was not a prima facie case presented to warrant a reopening was precisely the determination that the court declined to review. If the *Blatt* court could not review the facts of that case to determine whether Blatt had presented a prima facie case for medical disqualification, by the same token I simply do not understand how the majority in the instant case can review the facts and determine that Grosfeld presented a prima facie case of hardship. Surely neither determination can be said to be "obvious"; both involve judgment and discretion by the local board.

The majority suggests that the decision by Grosfeld's board not to reopen his

classification was based on factual and credibility resolutions which amounted to a decision on the merits, and argues that such a decision "under the statute and the regulations, must be subject to administrative review." It is, of course, true that a board may not deprive a registrant of his right to an administrative appeal by failing to treat his classification as reopened while, *de facto*, reopening by proceeding directly to a determination of his claimed classification on the merits. *E. g.*, United States v. Grier, 415 F.2d 1098 (4 Cir. 1969). But the issue here is whether an asserted error of this type is subject to preinduction judicial review, and *Blatt* dictates that § 10(b) (3) prohibits review of alleged erroneous reopening determinations.

Indeed, it has been more recently held in this circuit that *Blatt* applies and that § 10(b) (3) prohibits preinduction judicial review where the registrant alleges a *de facto* reopening and denial of his claim on the merits by his local board. In Polk v. Kessler, No. 71–1388 (4 Cir. June 15, 1971, reh. den. July 6, 1971), the registrant (Polk), after receiving an order to report for induction, submitted to his local board a request for reopening of his classification on the ground that he qualified for a sole surviving son exemption. He alleged that his father had injured his back and contracted hepatitis while in the Armed Forces during World War II, and had died in 1958 of a liver disease which, in the opinion of the father's physician, resulted from the service-connected injury and disease. Polk explained that he had not applied for the exemption earlier because at the time he registered for the draft in April of 1964, a registrant could not qualify for the exemption unless "sons or daughters" of the family had died as a result of service-connected injury or disease. The law was later changed to permit a registrant whose *father* had died as a result of such injury or disease to claim the exemption but Polk was unaware of this change in the law until he consulted an attorney after being ordered to report for induction. After receiving a letter from the Veterans Administration to the effect that in 1958 that administration had determined Polk's father's death to be unrelated to his service-connected injury and disease, the local board refused Polk's claim. The "Board Action Brief," relating to the meeting at which Polk's request was considered, contained the following:

"Registrant does not qualify for 4–A (Sole Surviving Son), see letter from Veterans Admin."

The board then notified Polk by letter that "The Local Board determined that you do not qualify for exemption as a sole surviving son." Nothing was said in either the "Board Action Brief" or the board's letter to Polk concerning the lateness of his claim or any other problem that would indicate the board did not give the claim full consideration.

Despite this evidence that the board had rejected Polk's claim *on the merits*, Polk was denied an administrative appeal on the ground that the board had declined to reopen his classification. The district court denied Polk relief. Polk v. Kessler, 325 F.Supp. 1039 (E.D.Va.1971). On appeal, Polk squarely presented to this court the question whether preinduction judicial review could be had of a decision of a local board not to reopen a registrant's classification, and consequent denial of an administrative appeal, where such decision was actually made on the merits of the registrant's claim.

On June 9, 1971, the day after *Blatt* was decided, Polk's appeal was argued before a panel of this court. Following the oral argument presented by Polk's attorney, the court felt it was unnecessary to hear argument by the Government. Judge Bryan, the judge presiding, stated, *"We agree that the district judge lacked jurisdiction to review the Selective Service classification prior to induction and we have decided that, recently in Blatt. * * * We make it clear that our decision rests only on a lack of jurisdiction*

*in the district court to review the Selective Service decision. Our decision is not a bar to consideration of this defense in a criminal hearing."* [1]  (Emphasis mine.)  The clerk was directed to enter an order of affirmance.  The court rendered a judgment on June 15, 1971, without opinion, affirming the district court's dismissal of Polk's action.

I understand *Blatt* to stand for the proposition that § 10(b) (3) bars preinduction judicial review of a local board's refusal to reopen a registrant's classification upon request, since the issues underlying such refusals involve questions of fact and mixed law-fact determinations requiring the exercise of judgment and discretion.  I understand *Polk* to have applied *Blatt* where the registrant claimed that his board's refusal to reopen was premised on its view of the merits of that claim.  I cannot escape the application of these precedents to the facts of the instant case; even given an inordinately narrow interpretation, they would clearly govern here.  Judge Craven, who authored the opinion in *Blatt*, suggested from the bench to Polk's attorney that both *Blatt* and *Polk* ultimately involved "medical fact question(s)"— the former whether Blatt's allergic condition disqualified him for service, the latter whether Polk's father had died of his service-connected injury and disease —and thus were indistinguishable.  I submit that one of the ultimate concerns with respect to Grosfeld's request for a hardship deferment can also be characterized as a "medical fact ques-

tion," *i. e.*, the effect of Grosfeld's entry into the Army on his mother's health.  I can only conclude that the instant case falls squarely under *Blatt* and *Polk* even as to the very nature of the factual problem presented.

In view of my understanding of the decided case law of this circuit, I see no need to explore in depth the precedents from other courts of appeals which the majority recognizes, both in support of and as unfavorable to, its position.  Suffice it to say that I find those cases which are unfavorable to the majority's present holding far more persuasive than those on which my brothers rely for support.

Aside from my view that § 10(b) (3) bars preinduction judicial review of a local board's refusal to reopen, I am unpersuaded that Grosfeld made out a prima facie case for entitlement to a hardship deferment.  A hardship deferment is usually based upon the fact that some person is dependent upon the registrant for financial support.  *See* 32 C.F.R. § 1622.30(a).  While 32 C.F.R. § 1622.30(d) does indicate that dependency can be based upon other than financial considerations, it does not specify any such special considerations.  Since Grosfeld clearly made no claim that his mother was dependent upon him for support, since there is no specification in the regulations as to what special considerations other than support may bolster a hardship claim, and since, as hereinbefore discussed, the hardship deferment statute [§ 6(h) (2) of the Se-

---

1.  The district court, in dismissing Polk's claim, Polk v. Kessler, 325 F.Supp. 1039 at 1041, found that Polk's tardiness in making his sole surviving son claim could not be deemed due to circumstances beyond his control, and that, therefore, the board was not *required* to reopen his classification.  The Government did not argue this question on appeal, nor did this court rule on or even indicate any view as to the correctness of the district judge's position on this issue.  Judge Bryan's comments, as set out above, make it clear that the

basis of this court's decision was *not* a ruling that Polk's tardiness could not be deemed due to circumstances beyond his control.

The lower court also found that "[I]n the instant action there is a substantial question as to whether Polk's father died of a service connected disease.  Consequently, the Board's refusal to reopen must be considered discretionary and cannot be questioned at this stage of the proceedings."  325 F.Supp. at 1041.

lective Service Act of 1967, *supra*] obviously provides for discretionary application, I have great difficulty in comprehending the reasoning of the majority that Grosfeld's claim that his mother's health would be endangered by his induction makes out a "prima facie" claim.

Grosfeld has used virtually every imaginable delaying tactic to avoid military service. After having been granted a II–S deferment for four years while attending undergraduate school and receiving his baccalaureate degree he entered graduate school at the University of Arizona, where he was also a part-time teaching assistant. Upon receiving a I–A classification Grosfeld requested a student deferment and a II–A occupational deferment, which classifications he was then precluded from receiving by § 6(h) (1) of the Selective Service Act of 1967. He enlisted the aid of University personnel and caused them to write to his local board to plead that his services were badly needed. Upon receiving an order to report for induction, Grosfeld requested a I–S deferment to allow his completion of the school year. After his local board had postponed his induction until June to permit him to complete the school year he claimed entitlement to a III–A hardship deferment on the basis that his induction would be injurious to his mother's health. After instituting suit to compel his local board to reopen his classification to consider his hardship claim, Grosfeld then submitted a conscientious objector claim. I cannot close my eyes to the overwhelming evidence in Grosfeld's Selective Service file indicating, beyond question, that he simply was trying to escape military service by any and every possible means.

I would hold that preinduction judicial review is barred in this case by § 10(b) (3), and that Grosfeld may assert his claims only by habeas corpus following his induction or as a defense in a criminal prosecution for refusing to be inducted.