**UNITED STATES of America,**
**Appellee,**

v.

**Allen Bernard WILLIAMS,**
**Defendant-Appellant.**

**No. 294, Docket 73-1745.**

United States Court of Appeals,
Second Circuit.

Argued Oct, 5, 1973.

Decided Oct. 31, 1973.

Michael A. Young, New York City (The Legal Aid Society, Robert Kasanof, New York City, on the brief), for defendant-appellant.

John N. Bush, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., S. D. N. Y., Peter L. Truebner, Asst. U. S. Atty., on the brief), for appellee.

Before HAYS, FEINBERG and TIMBERS, Circuit Judges.

FEINBERG, Circuit Judge:

Allen Bernard Williams appeals from a conviction in the United States District Court for the Southern District of New York, after a one-day non-jury trial before Inzer B. Wyatt, J., for refusing to report for induction into the armed forces.[1] 50 U.S.C. App. § 462(a). Williams argues that his induction order was invalid because the local board declined to reopen his classification when he requested a hardship deferment, that the court improperly considered evidence of his late registration for the draft and that the district court should have allowed his counsel to see the pre-sentence report. Finding no reversible error in any of these respects, we affirm.

Williams registered for the draft not shortly after his 18th birthday, when he was supposed to, but over four years later, in January 1971; about that time, he filled out the usual questionnaire and claimed to be married, although separated from his wife and two children. In March, he was classified 1–A, but neither requested a personal appearance nor appealed. After passing an army physical, Williams received a notice to report for induction on May 26, 1971. On May 24, Williams wrote his local board for a postponement of induction because he had not yet had time to get his family adequately situated "the first month of my absence." Williams stated that "I agree to be inducted,"[2] but pointed out that he still had to complete

> personal matters such as the putting away of my values. I have diamond jewelry that is very very costly and I can show forth my receipts.

However, he felt that "two weeks will be a sufficient amount of time."

The local board responded by postponing induction from May 26 to June 7. On May 31, one week after his first letter, Williams again requested a two-week postponement of induction. This time the reasons given were that his wallet had been stolen and that he was about to be married. The board again accommodated Williams, postponing induction to June 24, 1971. On June 21, Williams wrote once more. This time, he stated that he had to support ten other people,[3] and that his induction would cause "extreme hardship" to them. Williams pointed to "recent events" which occurred after he had received his induction order: His sister, who was not yet "on her feet," had been released from a Narcotics Addict Rehabilitation Center, and his father had suffered "a series of blackouts" and was going to a hospital for tests. The letter ended by asking for a chance "to prove my hardship claim."

The board responded immediately by postponing Williams's induction until July and by asking him to complete a dependency questionnaire and to provide various other documents, such as marriage and birth certificates and statements from the adults he was allegedly supporting. A short time later, the board postponed the induction date until further notice; thereafter, the board asked Williams to report for a courtesy interview and reminded him that neither the dependency questionnaire nor the documents had yet been received. On July 20, Williams appeared for that interview and repeated what he had said in his letter, but furnished no supporting evidence. The board refused to reopen his classification and ordered Williams to report for induction in November. On the scheduled date, Williams did not appear.[4]

---

1. Appellant was sentenced to six months in prison and probation for two years.

2. The letter actually said "indicted." We assume this to be a typographical slip.

3. These were his mother, his father, his 21-year old sister, her infant daughter, his 20-year old brother, his wife, two children of his own and two step-children.

4. He apparently appeared at the induction station one year later, but left before processing could be completed.

Appellant argues first that the local board had no basis in fact for refusing to reopen Williams's classification after it received his letter dated June 21, 1971. The then applicable regulation, 32 C.F.R. § 1625.2 (1972), is reproduced in the margin.[5] Under it, reopening is forbidden after an induction order is mailed to a registrant unless the board first finds a change in status "resulting from circumstances over which the registrant has no control." If that condition is met, the board is in effect required to reopen if the request "is accompanied by written information presenting facts" not previously considered "which, if true, would justify a change in . . . classification . . . ."[6] The board decided that the evidence submitted to it did not "justify" reopening. We conclude that on the basis of the record before it, the board had a right to feel that Williams never furnished enough information to warrant reexamining his classification, and that therefore its action was proper.

■■ In considering the request, the board could certainly take into account a number of facts: Although Williams said he had a wife and two children when he registered, he claimed no hardship deferment then. His first request for postponement of induction referred to his "very very costly" diamond jewelry and his second to the loss of his wallet—neither supportive of a claim of financial hardship; his second request stated he was about to get married, apparently contradicting the information that he was already married. (Nowhere did appellant suggest that he had, in the interim, obtained a divorce.) The board might well have concluded from these circumstances and from Williams's failure to register for over four years after his 18th birthday that it was faced with a pattern of delay through successive applications for postponement. Under these conditions, the board's request that Williams support his sudden claim of extreme hardship with written information, e. g., marriage or birth certificates, a dependency questionnaire and statements from the allegedly dependent adults, was reasonable, and Williams's failure to do so could properly have been regarded as crucial. In other words, we will not hold that a bare claim of extreme hardship to named dependents must *always* be regarded as conclusive on a request for reopening made after an induction notice has been mailed.[7] The chances of abuse are simply too great. When, as here, the board has

---

5. The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant, . . . if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; . . . provided, . . . the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction . . . unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control.

6. The regulation has since been amended to provide specifically that the board "will reopen" when the registrant presents facts which, if true "in the opinion of the board," would justify a change in classification, and other applicable criteria are met. 32 C.F.R. § 1625.2 (1973). The former change seems merely to ratify judicial gloss on the prior language ("may reopen") under which it was held that the board *must* reopen when the registrant's allegations are not refuted by other evidence in his file. Mulloy v. United States, 398 U.S. 410, 415–416, 90 S. Ct. 1766, 26 L.Ed.2d 362 (1970); Paszel v. Laird, 426 F.2d 1169, 1173 (2d Cir. 1970).

7. We need not decide whether, in the absence of the facts already referred to, appellant's letter of June 21 would have required reopening. Cf. Mulloy v. United States, 398 U.S. 410, 416, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970), distinguished as a pre-induction order case in United States v. Jones, 433 F.2d 1292, 1293 n. 6 (2d Cir. 1970), cert. denied, 401 U.S. 924, 91 S.Ct. 893, 27 L.Ed.2d 828 (1971), and in Ferrell v. Local Board, 434 F.2d 686, 688 (2d Cir.), application for stay of induction denied, 400 U.S. 913, 91 S.Ct. 170, 27 L.Ed.2d 152 (1970).

good reason to believe that a hardship claim is frivolous, it may require further "written information presenting facts," and when these are not furnished, may properly decline to reopen.[8]

■ Appellant next contends that the district court erred in denying—as a matter of policy—trial counsel's request to see the pre-sentence report. At the time of refusal, the court said "rightly or wrongly, I don't permit that. . . ." The Government claims that this remark has been wrenched out of context. The entire sentencing proceeding shows, it argues, only an exercise of the court's undoubted discretion not to disclose the whole pre-sentence report. Thus, the Government points out that the judge read almost verbatim into the record all those portions of the report which, according to him, might conceivably affect the sentence. (These related to Williams's prior criminal record.) We agree with appellant that an absolute disposition to withhold pre-sentence material would be barred under United States v. Brown, 470 F.2d 285, 287 (2d Cir. 1972), where the judge's language was certainly stronger ("it is not the policy of the Court to disclose pre-sentence reports . . . it has never been done in all my time in the courtroom that I can recall."). But whether or not the judge here took a truly inflexible stand against disclosure, there was no reversible error. We have examined the report, and the judge did disclose those portions that were substantially harmful to Williams. Thereafter, both counsel and appellant addressed the court, and neither contradicted the facts which had been revealed. Under these circumstances, we do not find any impropriety.

■ Finally, appellant argues, the trial court should not have allowed into evidence testimony about his late registration for the draft. We hold, to the contrary, that admission was proper; indeed, exclusion would have been erroneous. As we previously pointed out, the board could justifiably consider the more than four-year lapse of time on the question of whether Williams's request for a hardship deferment was a good faith claim of right or, on the other hand, a purely dilatory tactic. The court was entitled to consider this evidence, which was in the registrant's file.

Judgment affirmed.

TIMBERS, Circuit Judge (concurring in part and dissenting in part):

I concur in the judgment of the Court which affirms appellant's conviction for refusal to report for induction into the armed forces of the United States.

I also concur in so much of the majority opinion as is necessary to reach that result.

With respect to one aspect of the majority opinion which I regard as unnecessary to reach that result and therefore to be dictum, I respectfully dissent.

Specifically, the majority states that "a bare claim of extreme hardship to named dependents [need not] *always* be regarded as conclusive on a request for reopening made after an induction notice has been mailed." (emphasis in original). Although the majority disavows, by footnote, any intention to reach

---

8. By requesting such data here and concluding, in its absence, that "no evidence warrants any change in [appellant's] present classification," the board did not de facto reopen his case and thus deny him procedural rights attendant on a regular reopening. 16 C.F.R. § 1625.2 clearly contemplates a threshold determination of whether the registrant has made out a prima facie claim. The preliminary inquiry underlying this finding is not equivalent to reopening. United States v. Cohen, 485 F.2d 230 (2d Cir. 1973); United States v. Blaylock, 448 F.2d 1307 (4th Cir. 1971), cert. denied, 404 U.S. 1063, 92 S.Ct. 737, 30 L.Ed.2d 751 (1972).

that result in a case where there is no evidence that the hardship claim is frivolous, the negative pregnant of such statement suggests that there are or may be some situations in which unsupported allegations made after the induction notice has been mailed will require reopening. I disagree.

While we never have ruled upon this specific issue with respect to a hardship claim, we have held that a post-induction notice claim of conscientious objection *must* be supported by evidence—not allegations—before the board is required to reopen a registrant's classification. United States v. Jones, 433 F.2d 1292, 1293–94 n. 6 (2 Cir. 1970), cert. denied, 401 U.S. 924 (1971); Paszel v. Laird, 426 F.2d 1169, 1173–74 (2 Cir. 1970).

Although several circuits have held that an undocumented claim of hardship —as opposed to one of conscientious objection—is sufficient to require reopening, e. g., Grosfield v. Morris, 448 F.2d 1004, 1011–13 (4 Cir. 1971), such a result would appear to be contrary to the command of 32 C.F.R. § 1625.2 (1972). That regulation precludes reopening "unless the local board *specifically finds* there has been a change in the registrant's status . . . ." (emphasis added). This requirement is juxtaposed to that applicable to a pre-induction notice request for reclassification. The latter requires only the presentation of facts which, if true, would warrant reclassification. If bare allegations were to be viewed as sufficient to require reopening in some post-induction notice situations, the effect would be twofold: (1) the board would be unable to make specific findings because it necessarily would lack information essential to this threshold determination; and (2) board procedures would be the same for both pre and post induction notice requests for reclassification contrary to the plain command of the regulation.

I therefore would leave that issue for determination in a case where it is squarely presented by the record and is necessary to the result. This is not that case.